HUGO F. OSWALD v. HONORE GRENET.

Where a space in the plan of a town or city, by which the proprietor describes lots
   sold, is left without number or designation of any kind, it is not thereby to be
   taken as dedicated to public use. If, in such a case, the ground were used as a
   common by the public, without obstruction, for several years, it would present
   a different case.

Appeal from Bexar. The deeds described the lots sold, by
reference to the plan as recorded in both the office of the Clerk
of the County Court of Bexar County, and the office of the
City Surveyor of the city of San Antonio. The books of the
County Court were excluded; but the City Surveyor was in-
troduced as a witness, and produced the book of his office, in
which the plan was recorded. "The witness then testified
"that, in 1853, at the time he was elected Surveyor, and the
"book of surveys came into his possession, there was a faint
"red or black line about the place in controversy. He thinks
"that the lines were faint red lines. The lines of the original
"surveys are marked in red lines. Did not know how the
"lines came there; nor whether they were made in ink or
"pencil; they do not appear at present; they appear to be
"scratched off. The book of surveys was open to persons
"coming in the office; thinks the lines were dotted, not
"drawn." The addition to San Antonio was laid out in 1849.
The defendant erected buildings on the space in controversy
in 1853. This suit was brought to compel the defendant to
abate them, and for damages. There was no proof as to the
use of the space in controversy from 1849 to 1853, except that
it remained unoccupied. The defendant offered to prove acts
of ownership by Giddings, but the Court excluded evidence of
such acts, after the sale to plaintiff's vendor. The other facts
are stated in the Opinion.

*J. Waelder*, for appellant.    The Court erred in its third charge to the jury.    By reference to this section of the charge it will be seen that the Court assumes. a fact, which ought to have been left to the jury ; it assumes as a fact that Giddings, who sold to both parties in this proceeding, or those under whom they claim, sold with reference to a map, upon which the piece of ground in controversy was shown as a vacant space, neither numbered nor otherwise designated as private property.    In doing this, it is believed that the Court below travelled beyond its legitimate sphere, that at least the jury were misled as to a material fact in the case.    That the jury were misled by the Court ; that they deemed themselves bound to take for granted what the Court had assumed for them, is evident from the phraseology of their verdict : they say, " according to the charge," &c.    In this connection, it may be remarked, that the map of the lots sold by Giddings, as recorded in the book of the City Surveyor, does not sustain the assumption of the Court.    Upon that map the piece of ground in controversy was marked out as a lot, in the same manner in which the other lots are marked out, and in the same color of ink.    In addition, this piece of ground was not only marked upon the map like other lots of Giddings, but it was staked off upon the ground, in the manner in which this is done by surveyors ordinarily.    These stakes were placed upon the ground when the lots were first laid out, and had become covered with dust after so long a lapse of time.

There is, then, in this case, no proof to show a dedication to the public, or to the appellee.    The deed from Giddings to McLeod does not call, in its description of lots Nos. 21 and 22, for a public space as one of the boundaries.    It calls for Bonham Street, which runs between said lots and the ground in controversy.    If Giddings had intended to dedicate this ground to the public, the deeds would describe the surrounding lots as fronting on public ground.    Bonham Street would not have been carried through to Nacogdoches Street

on the map, nor would the triangle have been staked off as it was, according to the testimony of Clements. It may be said, that a dedication to public use may at times be proved by a use of land. But such use must be allowed unconditionally and fully for a period of years, and with the owner's assent. (6 Peters, 513.) Such use, however, ought to be for such a length of time that the public accommodation and private rights might be materially effected by the interruption of the enjoyment. But the dedication must also be under such circumstances as to indicate an abandonment of the use exclusively to the public by the owner of the soil. Hence there must not have been declarations made by the owner inconsistent with any dedication. (Irwin v. Dixion, 9 Howard, 30.) An adverse right of an easement cannot grow out of a mere permissive enjoyment, (The Frst Parish of Midford v. Pratt, 4 Pick. R. 222.) Had the appellant in this case been permitted to prove his own acts of ownership, exercised with the full knowledge and without objection on the part of those under whom the appellee claims title, and if he had been permitted to prove the declarations of all those parties, it would have most clearly appeared, that all those acts and declarations were totally inconsistent with any dedication of the piece of ground in controversy. Again, the map itself did show this spot to be reserved ground, by the red lines marked around it. The absence of a number is immaterial. And the mere exhibition of the plan of a new street, at the time of the sale of a piece of ground, to build a house in the line of the intended street, does not amount to an implied contract to execute the improvements exhibited on the plan, where the written contract is silent on that head. (1 Sugdon on Vendors, 27.) This seems to be in point in the case.

*W. H. Cleveland,* for appellees, 1. The recording by Giddings of said plan with streets and lots, and said square designated thereupon, and his selling by deeds referring thereto,

was a dedication of said square to the public. (Rowan's Executors v. The Town of Portland, 8 B. Munr. R. 232 ; The People v. Beaubien, 2 Doug. Mich. R. 256.)

2. A deed or particular form of grant was not necessary. (City of Cincinnati v. White, 6 Peters, 431 ; 3 Verm. R. 526: 6 Verm. R. 355.)

3. It is unnecessary that said plan should specify what was dedicated. It is sufficient that said square appears thereon as a public square, unenclosed and unencumbered, without any marks of separation, or appearance of reservation,. (8 B. Mon. 232.)

4. The plaintiff Grenet having become the purchaser and owner of the lots Nos. 21 and 22 on the east side of the said square, by title derived from said Giddings, referring to said plan, his rights extended to all the streets and public grounds, free from all claim or interference of said Giddings. After such dedication, Giddings could not make any subsequent disposition of said square, inconsistent therewith. (Rowan's Executors v. Town of Portland, 8 B. Mon. 232 ; City of Cincinnati v. White, 6 Peters, 431 ; Trustees of Watertown and F. W. White v. Cowen & Bagg, 4 Paige C. R. 510 ; Huber v. Gazley, 18 Ohio R. 18 ; 11 Ill. R. 554.)

5. The dedication cannot be controlled by parol evidence of Giddings' intention inconsistent with said plan. The evidence of Giddings' acts and declarations subsequent to the sale by him to the plaintiff's vendors, was therefore properly excluded, and also because they could not impair the previously acquired rights of the plaintiff's vendors. (8 B. Mon. 232.)

6. Evidence of any acknowledgement by Giddings' vendees of his ownership in said square, or even of assent thereto, by the plaintiff's vendors, was inadmissible, as it could not affect the fact of dedication, nor take away the plaintiff's rights to this action.

LIPSCOMB, J. The controversy in this case is, whether a

certain piece or lot of land, bounded by Bonham, Nacogdoches and Crockett Streets, in a plat of what is called Giddings' addition to the city of San Antonio, which map is recorded in the office of the Probate Court of the county of Bexar, is a common, dedicated to the public use or not.   It appears from the plat of the said lots, laid off by Giddings, the proprietor, that the piece of ground is of a triangular form, bounded as above stated, and the lots in the said plat are all numbered and delineated thereon, but the ground described above is not numbered or specially designated in the map.

The deeds to purchasers of the lots outside of, and on, the the streets so bounding the ground claimed as a common, are described by their numbers, the streets on which they front, the number of feet front and back, with a reference to the plat or map of Giddings' property, recorded as aforesaid.   Not one of them call for a front on the vacant piece or parcel of ground. The lot, or lots, of the plaintiff call for a front on the street, without any reference to the spot of ground, sought to be established as a public common ; nor is there any evidence that it had been used as a common by the people, or claimed as such by the persons owning lots in its vicinity.   It was in evidence, that appellee's vendor, whilst owning the two lots now owned by his vendee, the plaintiff in the Court below, appellee in this Court, offered to purchase the vacant space as it is called, but his offer was not accepted by Giddings.   The plat or map was recorded on the 16th of February, 1849, and the deed for the lots owned by the plaintiff, which he alleges are made less valuable by the erection of a house on the vacant lot, by the defendant, was made by Giddings on the first day of March, 1849.

The evidence of the Surveyor shows that he found stakes set but covered with the sand, around this spot, at its different corners, and that they leave a space between (around) this ground claimed by the appellant, of about the width of a street.   These are the material facts, appearing from the transcript of the record before us.

Among other charges made by the Court below, and here assigned for error, is the following : " If a person, laying off a " town or body of lots, for sale, recite in his deeds to purchasers " of lots that he sells said lot or lots by reference to a map or " plat of the lots, thus laid off, and so sold, and if such map or " plat of survey have a vacant space delineated thereon, and " not numbered, as the surrounding or other lots on such map " are numbered, nor having anything connected with its de- " scription on the map, to show that it was intended to be a " lot, and not a space for the public use or benefit, then such " space or square may, under all the circumstances, be consid- " ered as a spot dedicated to the public ; and any person, pur- " chasing with reference to such dedication, can maintain a " suit of this kind."

The question of what would amount to a dedication was very thoroughly examined by us in the case of Blair v. Odin, 3 Tex. R. 288 ; and after examining all the leading cases de-cided in the United States, we arrived at the following conclu-sion, that to sustain an action for the property didicated, the plaintiff must show a legal title ; or he must show the posses-sion of the use and a deprivation thereof ; and a suit brought to abate a nuisance by erecting a building thereon or obstruct-ing the use, must be governed by the same rule of law.

The case of the city of Cincinnati v. White, 6 Peters, 431, was that of a dedication of a piece of ground between Front Street and the river to public use. The city showed no title in fee, but it had been long used as a common thoroughfare, on which thousands daily passed and repassed, and costly build-ings were erected adjacent to it. The city sustained the dedica-tion, on the ground mainly of possession of the use. In the case under consideration, there was no evidence of the ground hav-ing been used as a common, and nothing showing for what it was designed. And the fact that the deeds to the adjacent lots not referring to it as a common, repudiates the supposition that it was so intended ; and if permitted to hazard a conjec-

ture on the subject, we might as well suppose it was designed for a church building or schoolhouse, as that it was designed for a common. Had the lots adjacent to it been sold by deed referring to it as a common, or had it been long used as such, without the assertion a private right by the owner of the lots so marked and recorded, it might have been regarded as a common; because, in the case first supposed, there would be a recognition of it as such by deed, and, in the second, it would be presumed that it had been intended to be a dedication. But the circumstances detailed by the Judge in his charge, cannot be regarded as sufficient evidence of an appropriation to public use, constituting it a dedication. The charge of the Court, as to the evidence sufficient to constitute a dedication, was erroneous; and the judgment is reversed and cause remanded.

Reversed and remanded.