## H. F. Oswald v. Honore Grenet.

A setting apart, or dedication to public use, of any part of a town, need not be by deed, nor need it be evidenced by the use of it having been continued for any particular length of time. It is sufficient, if there be an unequivocal act or declaration of the proprietor, showing the intention of dedication, and that others have acted in reference to, and upon the faith of such manifestation of intention.

If the owner of a town exhibit a map of streets or public squares, and sell lots with reference to such map, or calling, as boundaries, for streets not opened, this operates as an immediate dedication of such streets and squares to public use; and the purchasers of such lots have a right to have the streets thrown open forever.

Where town property is donated to the public, on condition that it be used for a special or specific purpose, it does not follow that it is immediately to be thus used or appropriated by the public. When this should be done, depends upon the nature of the donation, and the condition of the public to be benefitted by it.

An abandonment of a donation to the public, by non-user, will not be presumed from the lapse of less time than would raise the presumption of a grant; and the time will not commence to run, until the period has arrived, when the property dedicated ought to be used for the purposes for which it was specially set apart.

Appeal from Bexar. Tried below before the Hon. T. J. Devine. This action was brought by the appellee to compel the appellant to desist from the use and occupation of a small triangular piece of ground in the city of San Antonio, and remove therefrom a building placed thereon by appellant; which ground was claimed by the appellee to have been, by the original proprietor of that part of the town, dedicated to the public. The appellant denied the dedication, and claimed the ground by purchase.

The cause was tried, and there was a verdict and judgment for the appellee, which was reversed by this court in 1855, (as reported in 15 Tex. Rep.) and remanded. After the case went back to the court below, the plaintiff (appellee) amended his petition, by averring that the land or lot in controversy, in the original survey and plan of that part of the city of San Antonio, where it is situated, was not marked as a town lot, but was left as an open space, to be used in common by the public;

that J. J. Geddings, the original proprietor of said land, declared the same should only be used for the purpose of a public well ; and that adjacent proprietors, and plaintiff in particular, purchased contiguous lots, with the express understanding and declaration of said Geddings, that said open space should never be used for private purposes ; and that the said land had been used by the public as a common street, or open space, with the knowledge and approval of Geddings, for more than five years preceding the commencement of this suit.

At the Spring term, 1857, of the District Court, the cause was again tried, and verdict for appellee, which was set aside by the court that tried the case, and a new trial granted ; and at the Spring term, 1858, the cause again came on, and was tried, and again a jury returned a verdict in favor of appellee, and thereupon the court rendered the judgment and decree now sought to be revised and reversed.

The charge of the court to the jury was as follows : (1st) That if the jury believed that Geddings set apart the lot claimed by defendant (appellant), to remain as an open space for the benefit of the surrounding lot owners, and that he, (Geddings,) had so dedicated, or set apart, this piece of land, before or at the time of the purchase by McLeod, and that McLeod and other lot owners, purchased lots with reference to the alleged dedication, or reservation from sale or enclosure of this space, then they would find for the plaintiff.     (2d) A mere offer to give this lot, provided the lot owners would dig or construct a public well on the same, was, "or* Geddings," unless a well was dug, or attempted to be dug, at a reasonable time.

The defendant having moved for a new trial, which was overruled by the court, prayed an appeal to this court.  It was agreed between the counsel, that the copy of the original petition, and all the record now on file in this court, up to the time of the decision and mandate of this court on former appeal, should be referred to, and used, instead of a transcript of the same

---

*It is supposed by the reporters, that a part of a sentence, or paragraph, is in this place omitted by the clerk in making out the record.

proceedings on this occasion. By the statement of facts in this case, it appeared that plaintiff derived title to his two lots, Nos. 21 and 22, which lie contiguous to the triangular lot in controversy, from Morris, who derived title from McLeod, who derived his title from Geddings—deeds from Geddings to other individuals for lots in the immediate vicinity were also exhibited by plaintiff—a certified copy of the map of Geddings' addition, from the records of the county clerk of Bexar, and the office of the city surveyor of the city of San Antonio, referred to in the deed from Geddings to McLeod, were read, to which defendant objected, the objection was overruled, and the ruling of the court excepted to.

Plaintiff then proved by Charles Morris, that he sold the two lots, 21 and 22, to plaintiff—Morris lived in the neighborhood, and was one of the first settlers there—Geddings told Morris, that he, Geddings, had left that triangular space for a public well. Before Morris sold to plaintiff, he offered to buy the vacant triangular space from Geddings, but Geddings told Morris that he could not, and would not sell it, that he had left it for a public well. Morris told the plaintiff what Geddings said, and also told the same thing to the neighbors. Plaintiff lived on the lots, 21 and 22, sold to him by Morris, and had erected buildings worth from $2500 to $3000. A building on that open space, would obstruct the view, and be an injury to plaintiff's buildings. Morris heard what Geddings said, before he, (Morris) sold to plaintiff. No well dug on the vacant space.

Plaintiff also proved by Donenhouer, that witness had lived near plaintiff's residence six or seven years. The triangular space had always been open, up to the time a house was put on it by defendant. A house there would obstruct the view from plaintiff's houses, and injure their value materially to a man in plaintiff's business as a merchant, say $1000. The house, put there by defendant, is a small frame house witness bought near there six years ago; plaintiff began building a year after, and was building when defendant built the small frame house, on the triangular space. Plaintiff proved by Beckman, that Geddings said, he would give the open space between Nacog-

doches, Crockett, and Bonham streets, for a public well, if the neighbors would put one there. There was no building on the open space, until defendant put one there, which injures plaintiff's buildings on lots 21 and 22. There are streets on each side of this triangle. The neighbors never refused to make a well. Geddings once told witness, he would not sell the triangle; that it was not worth anything. He tried to sell it to witness, when defendant bought it. After defendant bought, he put posts about the space; until that time, there never was any separation or distinction, between the space and the surrounding streets.

Plaintiff proved by Huffmeyer, that plaintiff occupied lots 21 and 22, and erected valuable buildings thereon. Defendant put the house on the triangular space, when plaintiff had built his house,—may not be finished. Defendant's house obstructs the view from plaintiff's house, and injures the value of plaintiff's property. Geddings told witness there was a small space of ground there, that he would give for a public well. This space was always open, until defendant put a house there. Some of the neighbors refused to put a well there, and others were willing to do it.

Most or all of the above facts, were proven by other witnesses. John D. McLeod, who had purchased the two lots occupied by plaintiff, from Geddings, being dead, his testimony on a former trial, was proven by W. H. Cleveland, to have been, that Geddings told him, (McLeod,) before he purchased the two lots, 21 and 22, from Geddings, that this triangular space should always be kept open; that there should never be any building or obstruction upon it. This was his (McLeod's,) inducement to buy these lots; that he purchased with a view to the open space, and that Geddings and himself both understood that it should be vacant. That McLeod was under the influence of liquor when he testified, and had been drinking for some time previous. That McLeod on being asked if he was not under the influence of liquor, admitted it, but said he was sober enough to tell the truth.

7

Defendant produced a deed from Geddings; and then proved by Brady, that he, (Brady,) bought two lots, 50 and 51, about the same time, or a little after McLeod bought; that Geddings exhibited a map, showing this triangle distinctly marked, and that Geddings told him, that if they would dig a well on the lot, he would give it to the public: and by Colby, that Geddings told him, in 1850, he would give the triangle, if the people would dig a well on it; that it would increase the value of his unsold lots; did not know that the space was marked out; saw posts there, at the time the defendant was building.

Geddings being introduced by defendant, plaintiff objected to his competency, he being both defendant's and McLeod's warrantor; defendant released; and Geddings testified that he owned the land, and laid off the addition, including the triangular piece of ground; had a map of it made and recorded; after it was recorded, he marked the lines around the triangle; it was staked off with stakes at each corner. He proposed to give the ground for a public well, if the neighbors would dig one on it; thought it would benefit his other property; did not think he sold any lots before he marked off the triangle on the map; presumed he told McLeod what he told others; kept the proposition open until he sold to defendant; had offered to sell it to several; did not think plaintiff ever saw the stakes before he bought from Morris; but witness showed the stakes to McLeod; the map was recorded with the first deeds; would at first have taken five or ten dollars for the lot; perhaps said to McLeod, that his lots would be more valuable, if there was a public well on the lot.

Defendant proved by Waelder, that McLeod was much intoxicated at the time he gave his testimony. Some two or three years before the trial, witness inquired of McLeod as to the understanding with Geddings about the lot; McLeod said he knew nothing about it, except that he bought the two lots.

Plaintiff then proved that Geddings's deed from Jones, to which the map was attached, was filed 12th March, 1849, and was dated the 6th February, 1849.

*Waelder*, for appellant, referred to the opnion of this court, on a former trial of this cause, as reported in 15 Tex. Rep. 118, and also to the fact that the dedication by Geddings, if any, was conditional, which conditions were never acceded to, or accepted by the public. (2 Greenl. Ev. § 662). The only use the public ever had in the property in controversy, was merely permissive, which could not give an adverse right. (4 Pick. Rep. 222.) The property had not been so long used by the public, as materially to injure or affect the public, or individuals, by being deprived of it. (9 Howard, 30.)

*I. A. & G. W. Paschal*, for appellee, referred to briefs filed in three cases in the court, to wit: The city of San Antonio v. Nathaniel Lewis; Same v. Bryan Callaghan; Same v. Andrew Odin; and also to the statute, which provides that but two new trials shall be granted. (Hart. Dig. Art. 7, 63.)

WHEELER, CH. J. This case was before the court on a former appeal. (15 Tex. Rep. 118.) Since it was remanded, there have been two verdicts for the plaintiff; and the question now is, whether the evidence of a dedication to the public, of the spot of ground which gave rise to this controversy, is sufficient to warrant the verdict.

Respecting what will amount to, or may be received as evidence of a dedication, the law is too well settled to admit of controversy. A setting apart, or dedication to a public use, to be effectual, need not be by deed; nor need it be evidenced by the use of it having been continued for any particular time; it is enough, that there has been some clear, unequivocal act, or declaration of the proprietor, evidencing an intention to set it apart for a public use, and that others have acted in reference to, and upon the faith of, such manifestation of intention. If the act of dedication be unequivocal, it may take place immediately. If there be no such act, it may be evidenced by an uninterrupted use; and that need not be for any particular time.

Eight, and even six years, have been held in England, time sufficient to raise the presumption of a dedication from *user;* but it will depend upon the particular circustances of each case. ( Trustees, &c. v. Merryweather, 11 East, 376 ; R. v. Hudson, 2 Str. 909 ; R. v. Wright, 3 B. & Ad. 681; Woodyer v. Hadden, 5 Taunt. 125.)

A dedication has been defined to be, the act of devoting, or giving property, for some proper object, and in such manner as to conclude the owner. (Hunter v. Trustees, &c., 6 Hill, 407, 411.) Thus, if one owning land, exhibit a map of it, on which a street is defined, though not as yet opened, and building lots be sold by him, with reference to a front or rear on that street, this operates.as an immediate dedication of the street ; and the purchasers of lots, have a right to have the street thrown open forever. (Wyman v. Mayor, &c., 11 Wend. 486 ; Livingston v. Mayor, &c. 8 Id. 85; 1 Hill, N. Y. 189, 192.) And this principle is not limited in its application to the single street, on which the lots of the purchasers are situated. In the American notes to the leading case of Dovaston v. Payne, reported in Smith's Leading Cases, the general doctrine is thus stated, upon the authority of numerous cases. "If the owner of land, "lays out and establishes a town, and makes, and exhibits, a "plan of the town, with various plots of spare ground, such as "streets, alleys, quays, &c., and sells the lots, with clear reference "to that plan, the purchasers of the lots, acquire, as appurtenant "to their lots, every easement, privilege, and advantage, which "the plan represents as belonging to them, as part of the town, "or to their owners, as citizens of the town. And the right thus "passing to the purchasers, is not the mere right that the pur-"chaser may use these streets, or other public places, according "to their appropriate purposes, but a right vests in the purchasers, "that all persons whatever, as their occasions may require or in-"vite, may so use them ; in other words, the sale and conveyance "of lots in the town, and according to its plan, imply a grant or - "covenant to the purchasers, that the streets and other public "places, indicated as such upon the plan, shall be forever open to

"the use of the public, free from all claim or interference of the "proprietor, inconsistent with such use." (2 Smith's Lead. Cas. 5th Amer. edit. 208, 209; Rowan's Ex'rs v. Portland, 8 B. Mon. 232, 237; 3 Ib. 478, 481; 18 Ohio, 18; Spencer, 86, 106; 11 B. Mon. 163.) The principle upon which the binding and irrevocable nature of a dedication rests, appears to be this, that when once a way, street, &c., has been laid out on the soil, or on a map, and property has been purchased in reference thereto, the resumption of the street, or way, by the proprietor, would be an act of bad faith, and a fraud upon any interests acquired upon the faith of its being left open. Hence, it operates as an estoppel *in pais*, of the owner, from exclusive use of the property, or indeed any use, which is inconsistent with the public use, to which it has been dedicated. It precludes the party from re-asserting any right over the land, so long as it remains in public use. (City of Cincinnati v. Lessee of White, 6 Peters, 431, 439; New Orleans v. The United States, 10 Peters, 662; 16 Penn. State, 89; 14 Barbour, 521.) In Abbott v. Mills, 3 Verm. 521, 527, it was said, "the act of "throwing open the property to the public use, without any "other formality, is sufficient to establish the fact of a dedica-"tion to the public; and if individuals, in consequence of this "act, become interested to have it continue so, as by purcha-"sing property, &c., the owner cannot resume it." There are numerous authorities to the same effect. (State v. Catlin, 3 Verm. 530; 3 Zabriskie, 140; 3 Id. 354; 8 B. Mon. 232, 237.)

To apply this doctrine to the case before us. The lots in this addition to the city of San Antonio, were sold with express reference to a map, on which this space, if not left open as a common or public way, was, at least, not numbered or marked as a lot; and from its peculiar situation and form, the natural inference of those who consulted the map, with a view to purchase, would be, that it was intended to remain an open space, common, or way, for public use. The witness, McLeod, (the original purchaser from whom the plaintiff derived his title,) testified, that such was the express understanding between himself

and the proprietor, when he made the purchase. He states that the proprietor told him, before he bought lots 21 and 22, that this space would always be kept open; that there should never be any buildings or obstructions upon it; and that this was his inducement to purchase these lots; that he purchased with a view to the open space, and that it was the understanding between himself and the proprietor that it should remain open. If the jury believed the testimony of the witness,—and it was for them to judge of his credibility—it cannot be doubted, that the evidence was sufficient to warrant them in finding the fact of a dedication of this spot to public use.

But other witnesses testified, that this open space was left, and designed by the proprietor, for a public well; and the great weight of the evidence is to that effect. Some of the witnesses understood the proprietor to say, he would give it for a public well, if the neighbors would make the well; but the understanding of all, was, that it had been left, or would be given, for a public well; and that accords with the testimony of the witness McLeod, that it should remain open, and no buildings or obstructions should be placed upon it. It would so remain, if a public well was sunk there. There would probably be no structure to obstruct the view; and that, it seems, was what he considered material, and what he had in view in making a purchase. What he, and others probably, in the vicinity, were interested in, was, not that a public well should not be sunk there, for that would probably enhance the value of their property, but that there should be no building erected there to obstruct the view. What concerned them was, that the space should be kept open, and not be occupied by a structure like that which defendant has placed upon it; which according to the testimony of all the witnesses who speak to that point, materially impairs the value of the plaintiff's property. It would be, it would seem, quite immaterial to them, whether the space was to remain open for public use, as a way, or common, or the site of a public well, so that no structure was placed there to obstruct the view, and thus impair their comfort or convenience.

Oswald v. Grenet.

That the acts and declarations of the proprietor were such as to create this expectation, is indisputably established by the concurrent testimony of all the witnesses. Good faith required that this expectation, thus created by the proprietor, should be fulfilled by him; and the principle of a dedication applies equally, whether the particular manner of the use was designed to be in the one way, or the other. Unquestionably, there was a dedication of this space to that extent; and it operated as an estoppel upon the proprietor, from resuming the exclusive use of the property, or any use of it, inconsistent with that to which it had been dedicated, and in reference to which interests had been acquired by others.

But, leaving out of view the interest which purchasers of property in the vicinity had in keeping this space open, and the view unobstructed, and assuming that this space was to be given to the public for a well, upon the condition that the inhabitants would dig the well, it cannot be supposed that it was contemplated, that this would be done immediately, or until the wants or convenience of the inhabitants required it. This part of the city must first be peopled, before there would be inhabitants to dig, or have occasion for a well. It might be many years before this part of the city would become sufficiently populous, to require the convenience of a public well. It is not pretended, that there was any time limited within which it must be made. Those who purchased in view of the proffer of this use, had the right to suppose that it would not be withdrawn, nor could it be, to their detriment. Their purchase, in view of this proposed use, made it a dedication of the property for that use, which could not be resumed, until it should first be determined by non-user; and this cannot be presumed from a lapse of less time than that which would raise the presumption of a grant of the use. (2 Smith's Lead. Cases, 5th Amer. edit. 211; 6 Rich. 296.) And it would seem, that time would not commence to run for that purpose, until the period might reasonably be supposed to have arrived, when the particular use ought to commence. However that may be, it is certain, that the dedication could not be resumed because the well was not

dug immediately, or within three or four years. In the very nature of such a dedication, in laying out a new town, or an addition to an old one, it is implied, that the property will not be applied to the use intended, until the town shall have become sufficiently populous, to make such an appropriation subserve the interest and convenience of the inhabitants. There can arise no presumption of a release of the dedication, in such a case, from non-user for a period of four or five years; and less than five years had elapsed, when the exclusive use of the property was attempted to be resumed, and it was built upon by the defendant.

In any view of the case, we think the evidence sufficient to warrant the jury in finding the fact of dedication to a public use; and there is nothing in the evidence to warrant the resumption of the property by the proprietor. In our view of the law of the case, in its application to the evidence, it will be seen, that our opinion is, that there was no error in the charge of the court, or in the overruling of the motion for a new trial.

On the former appeal, there was nothing in the record to show for what use this spot of ground was intended; and the very material difference between the case as then, and now presented, will be sufficiently apparent without further comment. But it may be proper to observe, that we may then have attached too much consequence to the fact, that the deeds read in evidence called for the streets, instead of this small open space surrounded by streets. The fact that it was thus separated from the lots, by streets upon which the lots fronted; its peculiar form, not being a square, nor capable of being described as a public square, but being a small triangle, so small and so situated, as not to be capable of being conveniently made the subject of a descriptive call, sufficiently accounts for the fact that it was not so made in the deeds. The street was itself a more prominent object than this spot of ground, and of course the street would be made the descriptive call in the deeds.

We are of opinion, that there is no error in the judgment, and it is affirmed.

Judgment affirmed.