

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 17, 1947

Hon. W. L. Edwards　　　　　Opinion No. V-379
County Attorney
Victoria County　　　　　　Re:　Ownership of minerals
Victoria, Texas　　　　　　　　　in dedicated parks;
　　　　　　　　　　　　　　　　and the best bid for
　　　　　　　　　　　　　　　　mineral lease on
　　　　　　　　　　　　　　　　county owned land.

Dear Sir:

　　　　We refer to your letter of August 6, 1947,
supplemented by a very helpful brief received on August 16, 1947. Your factual statement is:

　　　"By plat and dedication in the year 1907 a
　　　Realty Company, known as Burton, Wharton
　　　and Wilson, laid out what is known as the
　　　Bloomington Townsite in this county. Cer-
　　　tain blocks were designated as 'Parks', and
　　　the dedication accompanying the plat, stated
　　　among other things:

　　　　　'We do hereby dedicate to the pub-
　　　　　lic all our right, title and inter-
　　　　　est acquired or to be acquired in
　　　　　and to the parks, school grounds,
　　　　　avenues, streets and alleys of said
　　　　　Town as shown by said map.'

　　　"About seven (7) months after the original
　　　dedication, C. A. Burton, who had acquired
　　　Wharton and Wilson's interest in the said
　　　townsite, filed an amended map, which desig-
　　　nated the same blocks as 'Parks,' and in the
　　　dedication accompanying the amended map ap-
　　　pears the following:

　　　　　'I hereby dedicate to the public all
　　　　　my rights, titles and interest ac-
　　　　　quired or to be acquired not hereto-
　　　　　fore dedicated in and to the parks,
　　　　　school grounds, avenues, streets and
　　　　　alleys of said Town as shown by the
　　　　　map hereto attached.'

"About 1912, the town of Bloomington incor-
porated and operated under said corporate
charter until about the year 1929, when it
was abolished as provided by law, and it is
still unincorporated. The corporate limits
included said parks."

Your questions are:

"Oil has been discovered on and near the said
townsite. The question now arises as to who
holds title to said parks. Incidentally, the
parks were never used as such, and there have
been no conveyances affecting the title to
the same other than the dedications above men-
tioned.

"Ihave been unable to find any law specifi-
cally regulating the title to such parks by
virtue of said dedications. It would, there-
fore, appear that the common law governs. The
most succinct statement of the common law regu-
lating such dedications that I have been able
to find is contained in 16 American Jurispru-
dence 402, Paragraph 56.

"Without reference as to how the above ques-
tion is answered, I would also like your opin-
ion as to the construction of Article 5400-A.
The county owns the fee title by regular deed
to a tract of land. In ascertaining what con-
stitutes the highest bid, can the Commission-
ers' Court take into consideration the poten-
tial value of a drilling contract in addition
to the regular cash bonus?"

We note your suggestion that no title may pass
by a dedication in the absence of a grantee. The rule in
that regard is stated in American Jurisprudence, Vol. 16,
page 358, Section 14, as follows:

"A dedication does not require the exis-
tence of a corporation to which it is made or
in which the title should vest. A dedication
may be valid without any specific grantee in
being at the time it is made. . . . The inter-
ests of those beneficially entitled to ease-
ments or dedications of a public, charitable,
or religious character are not allowed to

lapse or fail for want of what is technically called 'a person' to take the legal title, the public being an ever-existing grantee capable of taking the dedication."

The rules which pertain to map or plat dedications are stated in American Jurisprudence, Vol. 16, pages 365 and 367, Sections 22 and 23, as follows:

"Analogous to dedication by deed, and sometimes merely a variant phase thereof, and likewise closely allied to the doctrine of incidents and appurtenances to grants by deed, and to certain doctrines referable to the subjects of easements, private ways, and vendor and purchaser, is the doctrine of dedication by plat or map. Dedication by . plat or map is a common method of dedicating streets, public sidewalks, and public parks . . .

"The doctrine of dedication by plat is frequently connected with the sale of lots shown on the plat. The owner of a tract of land is held to dedicate such portions thereof as are designated for public use on the plat with reference to which he sells lots out of the tract. The sale of even one lot under these circumstances amounts to a dedication. . . ."

The rule which applies to proprietary rights and titles in parks isstated in American Jurisprudence, Vol. 39, page 809, Section 12, as follows:

"Where land is dedicated by the owner by a common-law dedication, a different rule applies. The effect of a dedication of land as a park or square is generally considered to create an easement in favor of the public, co-extensive with the purposes to which public parks or squares in such localities are usually applied. Where there is a corporation to represent the public, and take charge of its interests, the easement vests in such corporation, which thus becomes the trustee of a use; the naked fee remains in the original proprietor and his successors in interest. . . ."

The town of Bloomington having been incorporated in 1912, we assume that the dedicators sold lots to purchasers, with references to the recorded map which contained a dedication of the parks, streets, etc. in Bloomington, which are shown on such map, and, if that assumption be true, we are of the opinion that such purchases constituted an acceptance of such dedication, which then became irrevocable.

The case of Sanborn vs. City of Amarillo, 93 S. W. 473 (writ of error refused), states the rule applicable in cases where a dedication of a park is made by delineating it on a map by reference to which lots are sold, as follows:

"In this country the word 'Park' written upon a block of land represented upon a map or plan of a city or town is as significant of a dedication to the public as the word 'Street' written on such plan. The popular and natural meaning of the term when so used is a place set apart for the enjoyment, comfort, and recreation of the inhabitants of the city or town in which it is located, and this significance is unequivocal, and the grantor in such instance can not be heard to say that he entertained a different, secret intention. And, as will be seen from an examination of the authorities above, the legal effect of such platting, filing, and selling with reference thereto, is not varied by the fact that the word 'Park' is preceded by some qualifying word, as 'Morris Park', 'Annette Park','Ehmen Park', or 'Ellwood Park'. The dedication, then, being complete and irrevocable on the part of Appellant, it becomes immaterial whether the City of Amarillo ever formally accepted the dedication, so far as its right to maintain the defense of dedication to the public is concerned. Appellant's offer to dedicate was sufficiently accepted by the public when some of its individual members acted upon the offer, and purchased with reference to the exhibited maps. Nor could the facts, if proved, that Appellant had rendered the property for taxes and paid taxes thereon as belonging to himself, have changed the result. Neither the city officials nor any other public official would have any power to defeat the right of the public in property thus dedicated to public use."

Hon. W. L. Edwards, Page 5, V-379

The Court cites the cases of Oswald vs. Grenet, 22 Tex. 94; City of Corsicana vs. Zorn, 78 S. W. 924; Lamar County vs. Clements, 49 Tex. 347, and many other authorities supporting its decision. We also refer to Sections 24, 27, 29, 37, 38, 39 under "dedication" in Vol. 14, Texas Jurisprudence, pages 714, 719, 722, 733, 734.

It is elementary law in Texas that the fee title in a dedicated street is vested in the abutting owners, subject to use by the public for purposes of free travel and municipal uses, under municipal control; and that the fee title to a park, dedicated to the public, remains in the dedicator, subject to an easement in the public for customary park uses, regardless of the question as to whether the town was incorporated.

Answering your first question based on the factual situation presented in your letter:

The dedication of parks in the town of Bloomington by the owners "to the public" are valid dedications, although no grantee is named. When a lot was sold by the dedicator to a purchaser with reference to the map of Bloomington, such sale and purchase constituted acceptance of such dedication for the purchaser and the public; such dedication then became irrevocable by the dedicator. Eidelbach vs. Davis, 99 S. W. (2d) 1067. Such dedications may be vacated as provided in Art. 7227 V.C.S., and are subject to abandonment for non-use or if use for park purposes becomes impossible.

Your second question asks for a construction of Article 5400a, and if a Commissioners' Court can take into consideration the potential value of a drilling contract in addition to a cash bonus.

Article 5400a of Vernon's Civil Statutes appears in the Acts 1937, 45th Legislature, Chapter 279, as follows:

"An Act authorizing political subdivisions of the State of Texas to lease lands owned by such subdivisions for mineral development purposes and prescribing the method and manner of making such leases, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. Political subdivisions which are bodies corporate with recognized and defined areas, are hereby authorized to lease for mineral development purposes any and all lands which may be owned by any such political subdivision.

"Sec. 2. The right to lease such lands shall be exercised by the governing board, the commission or commissioners of such political subdivision which are by law constituted with the management, control, and supervision of such subdivision, and when in the discretion of such governing body they shall determine that it is advisable to make a lease of any such lands belonging to such district or subdivision, such governing body shall give notice of its intention to lease such lands, describing same, by publication of such notice in some newspaper published in the county, having a general circulation therein, once a week for a period of three (3) consecutive weeks, designating the time and place after such publication where such governing body will receive and consider bids for such mineral leases as such governing body may determine to make. On the date specified in said notice, such governing board or body shall receive and consider any and all bids submitted for the leasing of said lands or any portions thereof which are advertised for leasing, and in the discretion of such governing body shall award the lease to the highest and best bidder, submitting a bid therefor, provided that if in the judgment of such governing body the bids submitted do not represent the fair value of such leases, such governing body in their discretion may reject same and again give notice and call for additional bids, but no leases shall in any event be made except upon public hearing and consideration of said bids and after the notice as herein provided.

"Sec. 2a. Provided that all such leases may be granted by public auction and that no leases shall be executed in any case except and unless the lessor shall retain at least one-eighth royalty, provided further that in no case shall the primary term of said lease

be for more than a period of ten (10) years from the date of execution and approval there- of.

"Sec. 3. The fact that political subdi- visions of the State have lands owned, held, and used for public purposes but which purposes will not be hindered or interfered with by the development of said lands for mineral purposes, and that some of said lands have possibilities of minerals therein and that development of said lands for mineral purposes is necessary in order to conserve said mineral estate and prevent the loss thereof, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

There is no requirement in the law that the consideration for a mineral lease shall be cash. The per- tinent provisions in Sections 2 and 2a are ". . . On the date specified in said notice, such governing board or body shall receive and consider any and all bids submitted for the leasing of said lands or any portion thereof which are advertised for leasing, and in the discretion of such governing body shall award the lease to the highest and best bidder submitting a bid therefor. . . No leases shall be executed in any case except and unless the lessor shall retain at least one-eighth royalty." The only limitation on the discretion of the Commissioners' Court in that re- gard is that the royalty shall not be less than one-eighth.

In R. G. Wilmot Coal Co. v. State Purchasing Commission, 54, S. W. (2d) 634, 86 A.L.R. 127, it is held that in determining who is the "lowest and best bidder" the purchasing commission must consider not only the amount of the bid, but also business judgment, capacity, skill, re- sponsibility of bidder, and quality of goods proposed to be furnished. (Emphasis added)

We are of the opinion that Article 5400a of Vernon's Civil Statutes requires that the Commissioners' Court exercise its discretion in passing on the question as to what constitutes the highest and best bid for a min- eral lease, which bid may be an offer of a royalty based on a fractional part of mineral produced from the land to be leased, or may be for part cash plus a royalty of not less than one-eighth of such production. The Commission- ers' Court is authorized to consider all of the circum-

stances and, in its discretion, decide whether potential prospects of discovery of minerals and the value of a drilling contract with a lessee as distinguished from an "unless lease", which authorizes extensions by payment of rentals, will be in the interest of the county.

## SUMMARY

Dedication of a park to the public does not require a grantee, and if made upon a recorded map of a townsite, sale of lots in such townsite by the dedicators, with references to such map, constitutes acceptance of such dedication on behalf of such purchasers and also on behalf of the public, which thereupon becomes irrevocable. Such dedication and acceptance create separate easements for customary park uses in the public and also in such lot purchasers, with the fee title remaining in the dedicator. Such a dedication may be vacated as to the public as provided in Art. 7227, V. C. S., Eidelbach v. Davis, 99 S. W. (2d) 1067.

The decision as to what constitutes the highest and best bid, as used in Article 5400a, V.C.S., for a mineral lease of county owned land is within the sound discretion of the Commissioners' Court.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By W. T. Williams
Assistant

APPROVED

ATTORNEY GENERAL

WTW:wb:jrb