S.M. McASHAN, Jr., et ux., Appellants,

v.

RIVER OAKS COUNTRY CLUB, et al., Appellees.

No. 01–82–0021–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 9, 1982.

Rehearing Denied Dec. 30, 1982.

St. John Garwood, Jr., Houston, for appellants.

Sam Cruse, Jr., Dexter Joyner, Houston, for appellees.

Before JACK SMITH, PRICE and STILLEY, JJ.

## OPINION

STILLEY, Justice.

This is a suit by the S.M. McAshans (McAshans) to permanently enjoin River Oaks Country Club (River Oaks) from constructing a paved parking lot near appellants' yard or using certain property north of their home for any purpose other than a golf course.

The court, after a non jury trial, refused to enjoin the construction and use of the parking lot, but permanently enjoined River Oaks from constructing or erecting any improvements, except those that are usual and customary for the improvement or maintenance of a golf course proper, on that portion of the Club property lying west of the existing clubhouse and its southerly parking lot. The court also permanently enjoined River Oaks from using the above mentioned property situated west of the clubhouse for any purpose other than a golf course.

The McAshans' appeal from that part of the judgment denying them an injunction as to the paved parking lot contiguous to a northeast portion of their yard. River Oaks appeals from those parts of the judgment enjoining it from using that property lying west of its clubhouse for any purpose other than a golf course or from erecting or maintaining any improvements on that property other than those connected with a golf course proper.

We reverse and render as to that part of the judgment granting the injunction; otherwise we affirm.

## THE McASHAN APPEAL

The McAshans' suit for injunction alleged that the construction of a paved parking lot near their yard would create a nuisance and that they, through their predecessors in title, had acquired an easement by estoppel and an easement appurtenant over the golf course property, which easement required River Oaks to use and maintain the property as a golf course.

By three points of error, the McAshans urge that the court erred: 1) in excluding the parking lot area from its injunction, 2) in making finding of fact number 23, stating that the paving of the parking lot area does not constitute a recoverable element of damage to the McAshans, and 3) in making finding of fact number 28, stating that the construction of the paved parking area would not necessarily create a nuisance.

The McAshans contend that the evidence establishes as a matter of law that paving of the parking lot would create a nuisance and would cause them recoverable damage.

This dispute arose because of the use of an area lying north and east of the McAshans' home and yard situated in Country

Club Estates, a subdivision in Houston commonly referred to as River Oaks. The northern boundary of the McAshans' yard abuts a part of the southern boundary of that 186 acre tract owned and used as a country club. In May 1924, the home and lot owned by the McAshans was conveyed by warranty deed from Country Club Estates, a real estate development company to W.L. Clayton and wife, the parents of Mrs. McAshan. In December 1931, the Claytons gave the home and lot to the McAshans as a Christmas present. On July 16, 1925, the 186 acres comprising the River Oaks Country Club was conveyed by warranty deed from Country Club Estates to the country club. The record indicates that both Mr. Clayton and the country club had sale agreements with Country Club Estates before they received their warranty deeds.

In 1967, River Oaks Country Club built a new clubhouse to the west of the original club. As a result, some of the golf course holes were altered and some were renumbered. Gradually, the club began using space west of the new clubhouse, not previously used, for overflow parking. In about 1971, the club began using the "disputed area" northwest of the McAshans' property for overflow parking. At that time and up to the time it was paved, the "disputed area" was part of the "rough" on the first hole of the golf course. The "disputed area" begins at a point approximately 17 feet west of the northeast corner of the McAshans' lot and encompasses an area north and eastward from that point. The McAshans objected to the use of this area for overflow parking and conveyed their objections to the club's board of directors. Through the years these objections were reiterated, but the unpaved area was still used for overflow parking. The suit for injunction was filed when the paving of the "disputed area" began.

The McAshans' lot is 176 feet wide; its northern boundary abuts a part of the southern boundary of the club property. The "disputed area" parking abuts only the 17 most easterly feet of the north boundary of the McAshan lot. A view of the parking lot in question from the McAshan home is mostly obscured by trees and shrubbery. The McAshans' main objection to the paving of the parking lot arose from the parking activity in the past and the probability that the same objectionable activities would continue if the "disputed area" was paved. The McAshans testified that in the past their sleep was disturbed by the car lights, the noise from automobiles and bull horns. The parking lot attendants would screech the car tires in haste to deliver a car and receive a larger tip; cars would get stuck in the mud (the paving would cure this); and liquor bottles were strewn in the area. Generally, the McAshans complained of specific examples of parking activity that would interrupt their right to privacy, peace and security. The club president testified that certain steps were taken to alleviate the McAshans' complaints, such as the attendant's no longer using bullhorns to facilitate parking and changing the direction that the cars would be parked and exit the disputed area.

■ Before the construction and operation of the parking lot could properly be enjoined, as a nuisance, it was the McAshans' burden to show that River Oaks' use of the parking lot would create a nuisance per se or that its proposed use would necessarily create a nuisance. *Conner v. Smith*, 433 S.W.2d 911 (Tex.Civ.App.—Corpus Christi 1968, no writ). The evidence regarding the proposed use of the parking lot was not such as would compel a finding that such use would necessarily create a nuisance. The club's board of directors is empowered to limit the times of its use as well as the manner of its use to an extent that only the most sensitive might object. It can, for example, forbid valet parking; it could forbid parking except for designated times; it can police the area to insure that automobile lights will not shine in the direction of the McAshans' home or that motors are not raced or tires not screeched; and it could provide personnel to insure that users did not deposit rubbish in the area.

■ The mere prospect of future annoyance or injury from a structure or an in-

strumentality not a nuisance per se is not ground for an injunction. *Schulman v. Houston,* 406 S.W.2d 219 (Tex.Civ.App.— Tyler 1966, writ ref. 412 S.W.2d 34).

The evidence did not show as a matter of law that the construction would damage the McAshans, nor did it prove as a matter of law that the construction would necessarily create a nuisance, and there was sufficient evidence to support the trial court's finding that the parking lot would not necessarily create a nuisance. Since we will later hold that the evidence was insufficient as a matter of law to prove an equitable easement in favor of the McAshans, appellants' first point of error, complaining of the omission of the "disputed area" from the easement, is moot.

## RIVER OAKS' APPEAL

River Oaks' appeal complains of that part of the judgment forbidding it from using certain property west of its clubhouse for any purpose other than a golf course.

■ In its second point of error, River Oaks urges that the trial court erred in finding an equitable easement in favor of the McAshans because there was no evidence, or the evidence was insufficient, to support the elements necessary to be shown to support such an easement. We sustain this point of error.

Although the McAshans pled that they had acquired an easement by estoppel and an easement appurtenant, only the easement by estoppel is urged.

■ Generally, the doctrine of easement by estoppel or estoppel in pais holds that an owner of land may be estopped to deny the existence of an easement by making a representation that has been acted upon by a purchaser to his detriment. *Storms v. Tuck,* 579 S.W.2d 447 (Tex.1979). Essential to the creation of estoppel is proof that the misrepresentation was communicated to, believed and relied on by the innocent party. *Storms v. Tuck, Id.*

Estoppel in pais has been applied most often when an owner sells land with reference to a map or plat upon which are shown and designated streets, alleys, and similar areas. It has been held that when a purchaser, relying upon such representations, buys with reference thereto and spends money to make improvements, the seller will not be heard to say that such easements do not exist. *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196 (Tex.1962) citing *Oswald v. Grenet,* 22 Tex. 94 (1858); *Harrison v. Boring,* 44 Tex. 255 (1875), and *Lamar County v. Clements,* 49 Tex. 347 (1878).

Appellants' second point of error alleges that the evidence was legally and factually insufficient to show that any representation was made by the seller or that there was a reliance on the representation by the purchaser.

In support of their claim of easement by estoppel, the McAshans alleged and presented evidence that their predecessors in title purchased the golf course lot and built the home in reliance on a representation that the club property north of their lot and home would be used as a golf course.

Prior to 1923, Country Club Estates company acquired approximately 1100 acres of land and began developing an exclusive housing subdivision. 186 acres from this tract was set aside for use as a country club, and, since 1925, these 186 acres have been continually used as a country club by the members of River Oaks Country Club. In 1922, Mr. W.L. Clayton began construction of a home on Lot 8, Block 1 of Country Club Estates. The home was used by Mr. Clayton until December of 1931, when he conveyed it to his daughter, Mrs. McAshan, and her husband, Mr. McAshan.

Mr. McAshan testified that when Mr. Clayton gave him the documents pertaining to the home, included therein was a plat prepared by H.A. Kipp in January 1924, which depicted a golf course immediately north of the McAshans' lot and home; that Mr. Clayton told him that some years before, Mr. W.C. Hogg, one of the founders of Country Club Estates, told Mr. McAshan that the property north of their home would be used as a golf course and would never be

used commercially or for apartments. Although there is no direct testimony that Mr. Clayton relied on the map of January 1924, the McAshans claim that the map and the location of their home, together with the undisputed fact that the property has been continuously used as a golf course for almost 60 years, creates an inference that W.L. Clayton relied on a representation that the property north of their lot would be used indefinitely as a golf course. The testimony is neither legally nor factually sufficient to support a finding that Mr. Hogg made such a representation to Mr. Clayton, or that Mr. Clayton relied on such representation, regarding the future use of the Country Club property north of the McAshans. The testimony was hearsay and is of no probative value in proving the representation or a reliance. The map dated January 1924 was *prepared well after the construction of the house began in 1922,* so that particular map could not have been relied on by Mr. Clayton to locate the house on the lot. The deed to Mr. Clayton referred to a map prepared by H.A. Kipp, but did not state the date the map was prepared. The evidence shows that a map prepared by H.A. Kipp dated May 1, 1924 was recorded May 15, 1924, but the Kipp map dated January 1924 was never recorded.

The deed conveying the Clayton home to the McAshans on December 24, 1931, referred to the recorded map prepared by H.A. Kipp. There was other promotional material introduced showing that a golf course was located on the River Oaks Country Club property; however, this material was exhibited after Mr. Clayton acquired the home, and it does not promise a golf course in perpetuity on any particular area of the River Oaks property.

We limit our holding to that previously stated, that there is no evidence and insufficient evidence adduced at trial to establish an easement by estoppel, and our opinion should not be construed as granting permission for the further extension of the parking area westward along the McAshans' lot. We hold only that the evidence adduced at trial does not establish the McAshans' right to injunctive relief.

The judgment of the trial court refusing to enjoin River Oaks from using the paved portion ("disputed area") for parking is affirmed; that part of the judgment granting the McAshans' injunctive relief is reversed.