## CITY OF CORSICANA v. NEILL P. ANDERSON.

Decided November 28, 1903.

**1.—Dedication of Streets—Recording Map.**

Where the owner of land which has been mapped and platted into blocks, lots and streets as an addition to a city by a map placed on the public record, sells and conveys the lots or blocks by deeds referring to the map, in the description thereof, it constitutes a dedication to the public of such streets, and the rights in such streets become thereby vested in such purchasers and the public; and the fact that the owner may have entertained a different intention from that manifested by such acts is of no consequence.

**2.—Same—Dedication Irrevocable—Estoppel in Pais.**

The principle upon which the irrevocable nature of a dedication is one of estoppel in pais; for when land has once been laid out and map thereof made, with lots and blocks, streets and alleys shown thereon, and such lots or a part of them have been purchased with reference to such map, it would be an act of bad faith and a fraud upon those who had so purchased with a view to and upon the faith of such streets being left open. Nor is the principle limited in application to the single street on which the lots of the purchaser are situated.

**3.—Same—Adoption of Map of Another.**

Where the owner sells his land with reference to a plat in which the same is laid off into lots, blocks and streets, whether the map was made at his instance or not, or where, there being a city map on which the same is so laid off, he sells with reference to such map, he adopts such map by a reference thereto, and his acts will amount to a dedication of the streets.

**4.—Same—Acceptance of Dedication.**

Where the owner of land laid it off as an addition to a city and placed on record a map thereof showing lots, blocks and streets, and the city officers recognized the streets and did some work upon them, and an official map of the city was made to include such addition as shown on such recorded map, there was an acceptance of the dedication of the streets shown thereon.

Appeal from the District Court of Navarro. Tried below before Hon. L. B. Cobb.

*Richard Mays* and *B. R. Webb,* for appellant.

*Frost, Neblett & Blanding,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—The land involved in this litigation is designated as a part of Eleventh Street and East Tenth Avenue in the "Houston & Texas Central Railway addition" to the city of Corsicana, and is claimed by appellee as private property under a lease from said railway company. He was engaged in the erection of a wooden platform upon East Tenth Avenue, to be used in connection with a cotton compress operated by him. The city of Corsicana claimed that Tenth Avenue had been dedicated as a public street of said city, and threatened to interfere and prevent the building of said platform. Thereupon the appellee brought this suit to enjoin said city and its officers from such interference, and the city answered and by cross action alleged that said Eleventh Street had been dedicated also as a public street of said city; that appellee had obstructed said street by the erection of platforms and buildings thereon, and prayed that he be

ousted therefrom and that said city be quieted in its title to said Eleventh Street and recover possession of the same. The case was tried by the court without a jury and judgment rendered for appellee Anderson, perpetuating the injunction as to Tenth Avenue, and a recovery denied appellants on their cross-action as to Eleventh Street.

The evidence shows that on July 25, 1871, A. Groesbeck, W. J. Hutchins, F. A. Rice and W. R. Baker, who will hereafter be referred to as Groesbeck and others, claiming to hold the legal title to 687½ acres of land adjoining the then town of Corsicana, made a map and plat of the same, showing blocks, lots, streets, alleys and railroad right of way, and placed the same upon the deed records of Navarro County. At the same time Groesbeck and others executed and delivered to the Houston & Texas Central Railway Company a deed conveying to it, in consideration of its making its depot and station thereon, a strip 300 feet wide, through said tract of land. This deed was placed upon record in said county on the day the map was recorded, and referred to said strip of land therein conveyed as having been designated and shown on said map as "railroad reservation." There was nothing on the map or the pages where it was recorded, referring to this deed, or indicating that any deed had been given calling for said map and explaining in any manner the delineations thereon. Said deed further recited that "other blanks and spaces appearing on said map, may be mapped, platted or replatted over as grantors saw. fit," and "to be held, occupied and enjoyed by said company in such manner and for such purposes" as it saw fit; that "said strip or parcel of land shall be a continuous strip, not intersected by any street or way;" that streets running at right angles therewith should not cross it, but should abut thereon. This deed grants and dedicates to public use such portions of streets and alleys, "other than the railroad reservation," and "may be contiguous to lots or blocks sold to any other person." All other streets and alleys designated on map or portions of them not contagious to lots conveyed, to remain the private property of grantors or their assigns, and may be relotted or closed up as may seem best to them.

In 1874, Groesbeck and others, or the Houston & Texas Central Railway Company, placed on record a revised map of the addition, and in both the original and revised map there were shown thereon block 3 and several other blocks as being within what was known as "reservation." These blocks were lotted, and in dotted red lines, and block 3 abuts on Eleventh Street on the west and East Tenth Avenue on the north. By deed dated May 13, 1874, and filed for record July 28, 1875, Groesbeck and others conveyed to the Houston & Texas Central Railway Company all the unsold parts of the addition, and in September, 1875, said railway company placed on record a re-revised map of said addition, which eliminated said block 3 and said other blocks situated in "reservation," as shown by said former maps, and left the space theretofore occupied by them open and blank.

Prior to their conveyance of the unsold parts of said entire addition

in 1874, Groesbeck and others sold a number of lots and blocks in said addition, referring to and calling for the maps in the description thereof, placed on record by them. None of these lots, however, were in the "reservation." The railway company, after receiving their said deed dated May 13; 1874, continued to sell lots and blocks in said addition to various purchasers, giving description thereof as shown and designated on said second map which had been placed of record. W. M. Elliott made a map of said railway addition, which is a duplicate of the first and second maps, recorded in 1871 and 1874 respectively, and shows block 3 and blocks 1, 2, 6 and 12, and parts of Eleventh Street and East Tenth Avenue, situated in "reservation," the same as they did; the only difference being, the reservation was indicated in these maps by red dotted lines, and Elliott's map represented it as other portions of the addition by the usual black line. This map made by Elliott was adopted by the city council of Corsicana as the official map of said city on the 4th day of July, 1893.

The railway company maintained stock pens on Tenth Avenue for about eighteen years prior to 1900. The east line of these pens did not extend over the east line of the right of way strip, but was wholly on the right of way, extending north and south thereon. The size of the stock pens was cut down in 1896, and were entirely removed in 1900. After being reduced in size in 1896, they did not extend south into Tenth Avenue where it would cross the right of way. The Houston & Texas Central Railway Company, prior to January, 1889, was placed in the hands of a receiver, under whose authority one Dillingham, as commissioner, sold and conveyed, on January 1, 1889, all the properties of said company to one Olcott, who later conveyed the same to the Houston & Texas Central Railroad Company, the reorganized corporation, except the lots and blocks in said addition.

The heirs of John Cartwright, who were the owners of this tract of land, brought suit in the United States Circuit Court at Dallas in 1895 against Olcott for said block 3 and other blocks in said addition, describing said blocks and lots as designated on said maps, and recovered judgment for said blocks by the same designation. Said Cartwrights brought suit in the District Court of Navarro County, in 1897, against one F. M. Martin, the city of Corsicana, and other persons, for numerous lots and blocks of land lying in said addition. The case was compromised with a number of the defendants, and the Cartwrights have made deeds to them for lots and blocks in said addition, calling for Elliott's map, and describing said lots and blocks as shown and designated on said map. Cartwrights sued the railroad company for the right of way, and it was described in their petition as being "a strip 300 feet wide running through said addition according to the revised map of said addition filed by the railway." The heirs of Cartwright conveyed to the Corsicana cotton factory by deed of July 2, 1900, blocks 1 and 2 of the railway addition, which blocks are situated in the Houston & Texas Central Railroad addition to the city of Corsicana, and in

what is designated as "reservation," said deed referring to map of said city and addition made by Elliott; and also conveyed to James Garrity, June 25, 1902, for Mill and Elevator Company, block 34 and lots from 1 to 10 in block 9, calling for the map of the railway addition and also for Collin Street and Hunt Street of said addition. Hunt Street is designated on Elliott's map as Sixth Avenue.

The heirs of Cartwright conveyed to a number of different purchasers lots and blocks in said addition, describing same according to Elliott's map of the city, and calling for and referring to said map. They also conveyed to appellee, Anderson, August 6, 1902, land in said railway addition embracing block 3 and a part of East Tenth Avenue. This land sold to appellee is described as beginning at the southeast corner of block No. 3 according to the map of said city made by W. M. Elliott. Appellee then conveyed the same land to the Houston & Texas Central Railroad Company, giving in the deed the same description, and on the 18th day of August, 1902, the railroad company executed a lease for said property to appellee, and he went upon the land, began the erection of his compress, and extended the platform into and over Tenth Avenue. The railroad company, April 24, 1900, made deed to Corsicana cotton factory for lots 1 to 10 in blocks 1 and 2 in the "reservation," and on May 31, 1901, made deed to Caldwell for blocks 6 and 12 in the "reservation" both deeds referring to city map, and in negotiating the sales its representative exhibited Elliott's map. Streets running east and west through the railway addition are represented on all maps as crossing the right of way, and Eleventh Street, running north and south and the western boundary of said addition, is also shown on said map to cross the right of way. The city, for about twenty years, has worked the streets shown by the maps of the railway addition, including Eleventh Street and Tenth Avenue, excepting that portion of Tenth Avenue which was occupied by stock pens, and Eleventh Street where it crosses the railroad track. Block 3 abuts on Eleventh Street, and Eleventh Street at this point runs north and south between said block 3 and Croom's addition.

There is no point made on the pleadings. Numerous assignments of error, however, have been filed and urged, challenging the correctness of the findings and judgment of the lower court, but we believe it will be found, upon an analysis of said assignments, that the questions embracing all the points raised and presented for our decision, are: 1. Had the property involved in this controversy been dedicated to public use by the acts and declarations of the parties owning and dealing with the same at the time of the lease by appellee? 2. Had the city of Corsicana at said time accepted such dedication?

It seems to be the well settled doctrine that where the owner of land which has been laid off, mapped and platted into blocks, lots and streets as an addition to a city by a map placed on the public records, sells and conveys the lots or blocks by deeds referring to the map, in the description thereof, it constitutes a dedication to the public of such

streets, and the rights in such streets become thereby vested in such purchasers and in the public. Judge Moore, in treating of this subject, in the case of Lamar County v. Clements, 49 Texas, 354, said: "It has been repeatedly held by this court, as well as by many others, that where the owner of land lays out and establishes a town and makes and exhibits a map or plan of the town, with streets and public squares, and sells the lots with reference to such plan, the purchasers acquire as appurtenant to their lots all such rights, privileges, easements and servitudes represented by such map or plan to belong to them or to their owners; that the sale and conveyance of lots according to such map implies a grant or covenant, for the benefit of the owners of the lots, that the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map on faith of which the lots are sold, and especially so where the use to which the owner proposes converting them tends to lessen the value of the lots thus sold." Oswald v. Grenet, 22 Texas, 94; Preston v. City of Navasota, 34 Texas, 684; Huber v. Gazley, 18 Ohio, 18; City of Logansport v. Dunn, 8 Ind., 378; Beatty v. Kurts, 2 Pet., 566; Rowan v. Portland, 8 B. Mon., 232; see also, Corsicana v. White, 57 Texas, 382; Bond v. Texas & P. Ry. Co., 281. It is also held in said case of Lamar County v. Clements, 49 Texas, 354, that: "Where the dedication is manifested by unequivocal acts or declarations, upon which the public or those interested in such dedications have acted, the fact that the owner may have entertained a different intention from that manifested by his acts or declarations is of no consequence."

In the case of Oswald v. Grenet, supra, it is said: "A setting apart or dedication to a public use, to be effectual, need not be by deed, nor need it be evidenced by the use of it having been continued for any particular time; it is enough that there has been some clear, unequivocal act or declaration of the proprietor evidencing an intention to set it apart for a public use, and that others have acted in reference thereto and upon the faith of such manifestation of intention." It is further said, that if one owning land exhibit a map of it on which a street is defined, though not yet opened, and building lots be sold by him with reference to a front or rear on that street, this operates as an immediate dedication of the street, and the purchasers of lots have the right to have the street thrown open forever." Citing Wyman v. Mayer, 11 Wend., 486, etc.

The principle upon which the irrevocable nature of a dedication is founded is one of estoppel in pais. When land has once been laid out and map thereof made, with lots, blocks, streets and alleys delineated and shown thereon, and such lots or a part of them have been purchased with reference to such map, it would be an act of bad faith and a fraud upon those who had so purchased with a view to and upon the faith of such streets being left open. It is also said that "this prin-

ciple is not limited in the application to the single street on which the lots of the purchaser are situated."

It is contended by appellant that "where the owner sells his land with reference to a plat in which the same is laid off into lots, blocks and streets, whether the map was made at his instance or not, or where, there being a city map on which the same is so laid off, he sells with reference to such map, he adopts such map by a reference thereto, and his acts will amount to a dedication of the streets." We believe this proposition sound and announces a principle well established by the American decisions. Angell on Highways, sec. 149; Elliott on Roads and Streets, sec. 117; Note to 1 Law. Rep. Ann., 856; Church v Mayor, 33 N. J. L., 25, 97 Am. Dec., 696, and cases in first note on page 706; 11 Am. and Eng. Enc. of Law, 402, 1 Hill, 189, 11 Wend., 487. The facts in this case show that, while A. Groesbeck, W. J. Hutchins, F. A. Rice and W. R. Baker claimed and doubtless thought they held the legal title to the land involved in this suit, at the time they placed the original map of the same on record and conveyed to the Houston and Texas Central Railway Company, as a matter of fact the superior title was in the heirs of Cartwright. They sued and recovered the same, and thereafter the railroad company and others recognized their claim and dealt with them as the owners thereof. The Cartwright heirs, having been the owners of the land in litigation all the time, the rights of the parties do not depend upon the acts of Groesbeck and others and of the railway company, and will not be determined with reference thereto. Whatever effect such acts may have in throwing light upon and explaining the conduct of appellee in dealing with this property and in affecting the Cartwrights with notice of the condition and status of the same, yet the decision of the question of dedication will be predicated upon the acts of the Cartwrights manifesting a dedication, occurring before the property was leased by appellee. That the Cartwrights knew of the official map of the city made by Elliott there can be no doubt. That they also knew of the laying out of said lots, blocks, streets and alleys as shown by said map, and that many persons had purchased lots and blocks of ground in the railway addition, taking deeds therefor, referring to said city map in the description thereof and upon the faith that such streets would be left open, or opened up whenever the growth of the city and public interest required, is also satisfactorily shown by the evidence and circumstances of the case.

When these facts came to the knowledge of the Cartwrights, they had the right to adopt or repudiate the city map made by Elliott, and all the acts of the city officers in relation to said property; but there is nothing in the record before us indicating a disavowal of said map or acts. On the contrary it clearly appears that by various transfers of lots and blocks situated in said railway addition, some of them being within the "reservation," by reference to said city map in the description thereof, they have fully recognized and adopted said map. It will be noted that among the transfers thus made is found the deed from the

Cartwrights to appellee himself, conveying the property in dispute and describing it as beginning at the southeast corner of block No. 3, according to the map of said city made by W. M. Elliott, and that by the same description appellee conveyed the property to the Houston & Texas Central Railroad Company. By adopting the official map of the city of Corsicana made by W. M. Elliott, and making sales of lots and blocks situated in said addition, as above stated, the Cartwrights thereby as clearly indicated an intention on their part to give up and surrender the use of the streets shown on said map to the public, and such acts were as effectual for that purpose as they would have been had they made or caused to be made said map in the first instance. We are of the opinion that the undisputed evidence in this case establishes the acts referred to, and that said acts were unequivocal and fill the full measure required by law to constitute a dedication of property to a public use; that the Cartwrights and appellee, who holds under them, and who acquired no better right than they possessed, are estopped to deny the right of the appellants to the control and use of the streets involved in this litigation, and that the lower court erred in not so holding. There is no evidence in our opinion rebutting the presumption that the Cartwrights intended what their acts indicated, and the public and interested purchasers having acted upon those acts, it is immaterial that they may have entertained a different intention from that manifested by such acts. Lamar County v. Clements, supra; Elliott on Roads and Streets, secs. 125, 126.

That the city of Corsicana had accepted the dedication at the time appellee leased the property was proven beyond controversy. Its officers had recognized the streets involved in this suit, as well as others, as shown by Elliott's map of the railway addition, and did some work upon them. The testimony of the witness Henry is positive upon this point, and the only testimony to the contrary, so far as we have been able to discover from the voluminous record before us, is of an entirely negative character. One or two witnesses say that if these particular streets were ever worked they were not aware of it. Conceding they were not worked at the points where the stock pens were located on Tenth Avenue and where Eleventh Street crossed the railway track, nevertheless, inasmuch as they were worked at other places, we regard the failure to work them at the points named as not inconsistent with the idea of acceptance. Besides, we have in the record undisputed evidence of one of those acts of acceptance of a dedication strongly emphasized by the courts as satisfactory, if not conclusive, to wit, the making and adoption of a map of the property dedicated, in accordance with the intention and plan of the dedicator. Gilder v. Brenham, 67 Texas, 345. It is true that the city of Corsicana adopted the Elliott map before the Cartwrights did any act manifesting an intention to dedicate the property, but there is no evidence that its officers ever renounced the acceptance theretofore made, or desired to so do. It is in evidence that after the acts of the Cartwrights in respect to a dedication of the

property, and when the officers of said city learned that Tenth Avenue and Eleventh Street were about to be obstructed by appellee, they promptly asserted the city's right to keep them open for public use, and threatened to take, and doubtless would have taken, steps to prevent such obstruction, had it not been-for the intervention of this suit. The matter of obstructing the streets was referred to a special committee of investigation by the city council of appellant, August 19, 1902; they reported the result of their investigation, and August 28, 1902, by resolution passed, instructed the marshal of the city to remove obstructions placed in said streets and to keep them opened.

In the view we take of the case the fact that the railway company placed upon record in 1875 a re-revised map of the railway addition, whereon all the blocks and streets in the "reservation" were eliminated and shown to be blank spaces is of no consequence. The rights of appellant are not made to depend on the acts of the railway companies or either of them. So far as the Cartwrights are concerned, the record does not show that they ever sold any of the property by reference to said re-revised map. They ignored that map and referred to the city map made by Elliott in all their conveyances. Our conclusion is that the lower court erred in perpetuating the temporary injunction herein and in not entering judgment for appellants on their cross-action. The judgment of the District Court will therefore be reversed and judgment here rendered for appellant that the temporary injunction granted in this case be dissolved; that Eleventh Street, as shown on the city's map of said railway addition, be declared a public street of said city, and that the right of possession thereof for the use of the public be vested in the appellant, the city of Corsicana.

*Reversed and rendered.*

Writ of error refused.