POPE v. SAN ANTONIO, U. & G. RY. CO.
(No. 8299.)

Court of Civil Appeals of Texas. San Antonio.
July 12, 1929.

Rehearing Denied Oct. 9, 1929.

H. S. Bonham, of Beeville, for appellant.
Kleberg & North, of Corpus Christi, and E. H. Crenshaw, Jr., of Kingsville, for appellee.

FLY, C. J. Appellant instituted suit against appellee, having as its objects the nullification of certain condemnation proceedings, that a city ordinance under and by

which the condemnation proceedings were held be declared null and void, that appellee be enjoined and restrained from withholding possession of that portion of appellant's land held by it, and from depredating thereon and wasting the same, and be enjoined from depredating upon that portion of appellant's land known as Port avenue and West Broadway, and be restrained from depredating upon any portion of appellant's land not included in the condemnation proceedings, if such proceedings are held to be valid. The court granted a temporary restraining order, but afterwards on a hearing vacated such order, and denied a writ of injunction, and from that order this appeal has been perfected.

The record indicates that the condemnation proceedings, which applied to all of appellant's land over which the railroad of appellee was constructed, except that used by it in crossing Port avenue and West Broadway, were regular and valid, and the whole contest in this court is narrowed down to a contest of appellee to cross the two streets running through appellant's property. It seems to be conceded that the appellee, in building across the two streets, was acting under the authority of the city of Corpus Christi, within whose bounds the streets are situated.

Port avenue was conveyed by deed to the city of Corpus Christi by appellant, the deed containing the following clause: "It being the intention to dedicate the above-described strip of land for all lawful purposes as a street, being an extension of Elliott avenue, so long as said strip of land is used for street purposes, but to revert to grantor if and when such use of said tract for street purposes is discontinued, or if and when any railroad track is permitted to be constructed or maintained along the strip hereby conveyed: Provided that such track or tracks may be constructed and maintained across said strip upon payment to grantor herein of compensation proportionate to that paid for right of way on property immediately adjacent thereto, based on the amount of land taken." If appellant's consent to appellee crossing the street added anything to the authority given to appellee by the city, to whom the street was conveyed, appellee had that consent. The authority of the city, aided by the consent of appellant, gave appellee undoubted power and authority to build its railroad track across Port avenue. If appellee owes appellant anything for that part of the street used by it, it must be collected in a court of law, and not in a court of equity through the means of a writ of injunction.

█ In the record appears a map introduced in evidence by appellant, which shows the land of appellant and the location thereon of Port avenue and West Broadway, which streets are crossed by the railway track. The map shows a dedication of the two streets to the use of the public. Appellant had a survey made by the city engineer of his land, and he made the blueprint or map on which the two streets appear. Appellant accepted that map as a correct representation of his land, showing that he recognized, not only Port avenue, but West Broadway, as city streets. It is true that he swore that he had made a dedication of West Broadway, under certain conditions to be performed by the city, which he claimed had not been performed, but the dedication had been made and recognized by him, and property had been sold with reference to it. The streets were delineated also on a map placed in evidence by appellee, the correctness of which was not assailed by appellant. Appellant had that map prepared, and sought to sell the land to persons in Cuero with reference to that map.

West Broadway was clearly recognized by appellant as a dedicated street in Corpus Christi. The trade with the Cuero people seems to be pending yet. J. S. Anderson, the right of way man for the railway company, swore: "It has always been my understanding that West Broadway was a street; it has always been considered so; all the maps in Corpus Christi that I have ever seen show West Broadway as a street, and the Harrison tract, that came up the day before your suit, the field notes called for the north line of West Broadway; practically all the records call for it, and all the maps that you can see, with reference to West Broadway. Apparently the city recognizes it as a street; they granted a franchise across it. They included West Broadway in the franchise." That testimony was uncontradicted; the only claim that it was not a street was that the city had not complied with the conditions under which the dedication of West Broadway was made. Appellee stated the conditions as follows: "I made an agreement with the city of Corpus Christi with reference to West Broadway. I never executed and delivered any conveyance to it. I made an agreement with them to give my part of the land to open West Broadway all the way out, if the city would get the crossing of the cemetery tract and connect up to the north end of Hill Crest and Nueces Bay Heights. The city has not complied with those conditions."

Still appellant used maps on which the street appeared, and was endeavoring to contract with parties for the sale of his land as bounded by West Broadway. He had a survey made of the land, and swore that it was correct, and on it West Broadway appeared as a street. He testified in regard to his proposed sale of the land to Cuero people: "If they bought it, I would have to allow them the street, regardless of whether the city carried out my agreement or not." He recognized the fact of dedication, no matter whether the verbal conditions were met or not. The public knew nothing of the private agreement with the city; they did know that all the maps, and all calls in the sale of contiguous lands, were made with reference to West

Broadway. The circumstances show an acceptance of the dedication, and show that the city regarded it as one of the streets. This clearly appears by the grant to appellee of the right to cross the street.

As said by Elliott, Roads and Streets, § 128: "Dedication may be established against the owner of the soil by showing that he has platted the ground, representing streets and alleys on the plat, and has sold lots with reference to it, or by showing that he had adopted a map or plat made by public officers, or other persons, or by showing that he has sold lots describing them as bounded by a street." Appellant has adopted a plat made by public officers, and states that it is correct. He is endeavoring to sell his land according to that plat, and said that the proposed purchasers would not buy without the street as delineated on the map. He recognized the fact that a dedication had been effected, so far as the public or prospective buyers were concerned. As said by Elliott, § 163, where there are conditions unknown to the public, the general rule is the condition will fail and the dedication stand.

Again, Elliott, Roads and Streets, rightly states: "The principle which sustains the theory that the doctrine of implied dedication, rests upon the open conduct of the owner of the soil, will be found to be an old and well established one. It is thus stated by an elementary writer, who, in speaking of estoppels founded on admissions, says: 'It is of no importance whether they were made in express language to the person himself, or implied from the general and open conduct of the party. For, in the latter case, the implied declaration may be considered as addressed to every one in particular who may have occasion to act upon it. In such cases the party is estopped on grounds of public policy and good faith from repudiating his own representations.' This principle is applied to dedication in a forcible and well-reasoned case by the Supreme Court of Connecticut. [Noyes v. Ward, 19 Conn. 250]. In another case [Parrish v. Stephens, 1 Or. 59] it was said: 'He who induces the public to believe his land a gift, or knowingly permits them to use or treat it as their own, until they have so accustomed themselves and adjusted their property and accommodated their business to it, that they cannot without detriment be dispossessed, confers that which he can no more resume without a wrong than he can rightfully seize what was acquired otherwise than by his gift.' " See City of Corsicana v. Anderson, 33 Tex. Civ. App. 596, 78 S. W. 261.

The court rightfully held that, if appellant had any rights to be conserved or vindicated, he had an adequate remedy at law. It is true, as contended by appellant, that it is provided in section 1, art. 4642, Revised Statutes of 1925, that a writ of injunction may be granted where "irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law," but the facts of this case present no such condition. No irreparable injury to real estate belonging to appellant is shown by the record. It would be only a matter of damages sufficient to cover any injury arising from the railway being constructed across the streets.

The evidence indicates that, when appellee was served with notice of the granting of the temporary writ, the road was complete across the two streets, and equity will not intervene to prevent an act that has already been accomplished. There would be nothing upon which the writ could operate. It is a moot case, so far as injunction is concerned. Jones v. Philquist (Tex. Civ. App.) 249 S. W. 516; Carter v. White (Tex. Civ. App.) 260 S. W. 276.

The judgment is affirmed.