**DOW et al. v. AMERICAN LIBERTY OIL CO. et al.**

No. 4847.

Court of Civil Appeals of Texas. Texarkana.

May 8, 1935.

Rehearing Denied May 30, 1935.

McBride, Hamilton, Lipscomb & Wood and W. H. Reid, all of Dallas, J. B. Hatchitt, of Wichita Falls, and Wm. Hodges, of Texarkana, for plaintiffs in error.

Wynne & Wynne, Saye, Smead & Saye, and Jack Price, all of Longview, Julius H. Runge and J. W. Timmins, both of Dallas, Slay & Simon, of Fort Worth, and Edwin

Lacy, of Longview, for defendants in error.

HALL, Justice.

As plaintiffs in error were plaintiffs below, and defendants in error were defendants below, they will be referred to in this opinion simply as plaintiffs and defendants, respectively.

On March 31, 1933, plaintiffs instituted this action in the nature of trespass to try title and for damages against the defendants for the title to a tract of land comprising 3 acres, a part of the Mary Scott Headright survey in Gregg county, Tex. The defendants answered by general denial, plea of not guilty, and filed cross-actions in the nature of trespass to try title. It was contended by plaintiffs that title to this tract of land had matured in Sallie Smith by virtue of the statutes of limitation, and they, except Sallie Smith, were claiming an interest in the minerals under same by mesne conveyances from Sallie Smith, she claiming the reserved royalty and the fee.

By deed dated March 28, 1905, H. T. Elder and J. S. Elder conveyed to Edmond Smith a part of lot No. 4 of the Elder subdivision of the Mary Scott survey described as follows: "Beginning on the West boundary line of Mary Scott Survey at the N. W. corner of a tract of land sold this day to Wesley Butler; thence N. 485 vrs. to corner stake for corner; thence East 623 vrs. to corner stake for corner; thence South 485 vrs. to Wesley Butler's Northeast corner; thence West Butler N. boundary line 623 vrs. to place of beginning, containing 53–1/3 acres of land, more or less."

On the same date the Elders agreed to sell Wesley Butler all of block 3 of the Elder subdivision. No deed passed to Wesley Butler and the land reverted back to the Elders. On February 29, 1909, H. T. Elder and sons conveyed to Sallie Smith a part of block 3 of the Elder subdivision, said land lying immediately south of Edmond Smith's tract and is described as follows: "All that certain tract or parcel of land situated in the County of Gregg, State of Texas, and more fully described as follows, to-wit: Beginning on the West boundary line of the Mary Scott H. R. Survey; at the SW corner of Edward Smith land, witness Black Walnut and a red oak; thence S. 9.54 chains to corner from which a hickory 10 in. in dia. brs. E.

11 links; thence E. 26.23 chains to corner from which a pine 10 inches in dia. brs. N. 41 deg. W 8 links; thence N. 9.54 chains to S. E. corner of Edward Smith's land; thence W. 26.23 chains to place of beginning containing twenty-five (25) ———— of land, a part of Mary Scott H. R. Survey."

During the year 1901, Elder and sons, who owned the Mary Scott survey, employed a surveyor by name of Hoskins to subdivide same. This was accomplished by Hoskins and said survey was subdivided into six blocks, numbered from 1 to 6, inclusive. By reference to the following map of the Elder subdivision of the Mary Scott survey, the location of the Edmond Smith tract, the Wesley Butler tract, and the Sallie Smith tract will be clearly shown. The Edmond Smith tract as described by calls for course and distance extends from the west boundary line of the Elder subdivision to the dotted line; and the same is true of the Sallie Smith tract. The parcel of land shaded on the plat and lying immediately east of the Sallie Smith course and distance tract is the land in controversy.

In 1930 Sallie Smith executed a mineral lease covering her tract of land to one Biscoe under whom defendants hold. She used the same description in this lease as contained in the deed from Elder to her, except she added the words "more or less" after the number of acres stated.

It is the contention of the plaintiffs that the deed from Elder to Sallie Smith is unambiguous on its face and is not subject to parol evidence to explain it, and that its calls for course and distance should control in view of the fact that no natural or artificial objects were found on the ground at the northeast and southeast corners. The defendants opposed this theory and contend that the deed contains a latent ambiguity; that when the footsteps of the surveyor are

traced to the artificial objects now on the ground, her eastern boundary line will lie in the old division line between block 2 and block 3 of the Elder subdivision. The case was submitted to a jury on two special issues, both of which were answered favorably to defendants. The trial court entered judgment for defendants and the plaintiffs prosecute their appeal to this court.

■ Several assignments of error are predicated upon the action of the trial court in admitting oral testimony relative to the location of the calls in the deed from Elder to Sallie Smith and in following the footsteps of the surveyor Bradshaw. We do not think the trial court committed error in admitting this testimony. Sallie Smith's deed called for her northeast corner to be identical with the southeast corner of Edmond Smith's land; and Edmond Smith's deed called for his southeast corner to be identical with the northeast corner of Wesley Butler's tract, which the evidence showed to be the northeast corner of block 3 of the Elder subdivision. Edmond Smith purchased his tract of land in 1905, four years before Sallie Smith purchased, and fenced same immediately, fixing his southeast fence corner at the northeast corner of block 3, Elder subdivision. The location of Edmond Smith's southeast corner on the ground at the time Sallie Smith purchased would fix the location of the call in Sallie Smith's deed calling for his southeast corner rather than Edmond Smith's southeast call in his deed as fixed by course and distance. In other words, when Sallie Smith purchased from Elder, Edmond Smith had his southeast corner established on the ground at the northeast corner of block 3 of Elder subdivision. It is our opinion that the call in Sallie Smith's deed for her northeast corner to be at Edmond Smith's southeast corner would mean his southeast corner as fixed on the ground at the time she purchased rather than a course and distance call named in his deed. City of Dallas v. Schawe (Tex. Civ. App.) 12 S.W. (2d) 1074; Kirby Lbr. Co. v. Gibbs Bros. & Co. (Tex. Com. App.) 14 S.W.(2d) 1013.

■ If the deed to Sallie Smith contained a latent ambiguity, any legitimate evidence by the parties who assisted Bradshaw at the time he laid out the Sallie Smith tract, as to what he did and where he went, in surveying same on the ground, is admissible to show the true boundary lines of said land. As was said by the Supreme Court in the case of Oliver v. Mahoney, 61 Tex. 610: "For when we have found the footsteps of the surveyor, we have found the great object of our search." We are of the opinion that the Sallie Smith deed when applied to the ground was ambiguous in at least one call; that is, from her southeast course and distance corner north to Edmond Smith's southeast corner. It is perfectly apparent that the call to go north from Sallie Smith's southeast course and distance corner will intersect Edmond Smith's south line some 200 feet west of his fixed southeast corner. Therefore, it is our opinion that the testimony of witnesses respecting the footsteps of the surveyor Bradshaw when he laid out the Sallie Smith tract of land and located her southeast corner was admissible as tending to fix Sallie Smith's southeast corner on the ground.

■ Several assignments of error are leveled at the special issues submitted to the jury. Among other things, it is contended that they are on the weight of and not supported by the evidence. Two special issues were submitted to the jury which were identical, with the exception that they had reference to the southeast and the northeast corners of Sallie Smith's tract of land, respectively. Special issue No. 1 is as follows: "At what point on the ground, do you find from the evidence, the surveyor Bradshaw, in laying out the Sallie Smith tract in 1909, fixed and established the South-east corner of said tract? That is to say—Did he fix and establish said S. E. corner at a point 26.23 chains (1731.2 feet) approximately East from the recognized corner of said Sallie Smith tract,—or did he fix and establish said Southeast corner on the old marked division line between lots 3 and 2 of the Elder Sub-division, approximately 205 feet farther east?"

There was evidence supporting special issue No. 1 by both Sallie Smith and Edmond Smith to the effect that Bradshaw actually went with his compass to a point on the division line between block 2 and block 3 of the Elder subdivision and there placed a pine knot and marked a pine as a bearing tree. There was testimony by the surveyors who recently surveyed this land that a pine stump was found near the southeast corner in the division line between block 2 and block 3 of the Elder subdivision and that same was in the ap-

proximate position as called for in the deed. There was also testimony that the pine tree which this stump bore while standing had marks on it. This evidence, in our opinion, was sufficient to warrant the court in submitting this issue to the jury. The form of this issue, in our judgment, is not subject to the criticism offered by the plaintiffs.

Regarding special issue No. 2, we do not find in the record any evidence that Bradshaw at any time fixed the northeast corner of Sallie Smith's land on the ground. The evidence discloses that he never went to this corner; that he fixed same at the southeast corner of Edmond Smith's land without going to it. We are of the opinion that there was error in submitting this special issue as framed. However, the view that we take of this case, it was harmless, for the reason that the deed and the undisputed evidence in the record fixed Sallie Smith's northeast corner at Edmond Smith's southeast corner as it was located on the ground at the time Sallie Smith purchased it from Elder. Edmond Smith's southeast corner was the same as Wesley Butler's northeast corner, and Wesley Butler's northeast corner was the northeast corner of block 3 of the Elder subdivision. Hence, Sallie Smith's northeast corner, Edmond Smith's southeast corner, and Wesley Butler's northeast corner, and the northeast corner of block 3, Elder subdivision, are fixed at the same point and become a common corner. Therefore, it seems to us that issue No. 2 should not have been submitted in any form.

We next consider the assignments of error having to do with the action of the trial court in interrupting one of the attorneys for plaintiffs while making his argument to the jury. The argument of the attorney contained in this bill of exception and the qualification of the trial court are so lengthy they will not be copied in this opinion. From an inspection of this assignment, it is seen that the attorney was making an argument as to the intention of the vendor and vendee in the Sallie Smith deed to convey only 25 acres of land. In his closing remarks before being interrupted by the court, he used this language: "Gentlemen, I don't believe you are going to make any such finding as that, because if you do, there is not a deed on record in the State of Texas * * *"

At this juncture the court stopped counsel and admonished him that he was "wholly outside of the legitimate argument on the issues submitted to the jury." At this point a colloquy took place between the trial judge and counsel, after which counsel for plaintiffs excepted to the action of the trial court. In our opinion there was no error in this action of the trial court. It seems to us that no reasonable mind could fail to grasp what counsel would have said had the court not interrupted him. It became the duty of the court to prevent any of the counsel from engaging in argument outside the record, and clearly this statement, had it been concluded, would have been objectionable. The court in qualifying this bill of exception, among other things, stated: "The court knew from the previous arguments made to it what counsel was going to tell the jury. Believing that this argument might cause the jury to apprehend for the security of their own property rights and to lead them away from the evidence of the case bearing upon the issue submitted to them, the court instructed and admonished the counsel that his argument was outside the legitimate scope of the evidence and issues submitted."

The trial court does not have to wait until harm has been done, and the work and expense of a long and tedious trial is brought to naught, before he intervenes. If, as in this instance, it clearly appears to the trial court that counsel is in the act of violating the rules of legitimate argument, it becomes his duty to stop him before any harm is done. Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W. (2d) 435.

The other assignments of error brought forward in this appeal have been carefully examined and are respectfully overruled.

Entertaining the views expressed in the foregoing, it is our opinion that the judgment of the trial court in all things should be affirmed, and it is so ordered.