CITY OF DALLAS, Appellant,

v.

J. A. CROW et al., Appellees.

No. 15496.

Court of Civil Appeals of Texas.

Dallas.

April 24, 1959.

Rehearing Denied July 24, 1959.

H. P. Kucera, City Attorney, and N. Alex Bickley and Charles C. Wells, Dallas, for appellant.

McKool & Bader, Dallas, for appellees.

DIXON, Chief Justice.

This is a suit for title and possession of a strip of land 50' by 101' which is now a part of Ocalla Street in the City of Dallas, Texas. At the time this dispute arose Ocalla Street already extended to and beyond the strip in question. The street ran in a northwesterly direction to Garland Road, but its course towards Garland Road was broken for a distance of 101 feet by the land in controversy.

Appellees J. A. Crow and wife, Mary Crow claim by and through a warranty deed dated April 17, 1945 conveying a large tract of land from A. E. Diceman and Laura Diceman to J. A. Crow. It is appellees' contention that the tract so conveyed includes the strip of land in controversy.

Appellant City of Dallas claims by and through a quitclaim deed dated January 14, 1958 from Bernard Whitten, Administrator of the Estate of A. E. Diceman, deceased; and claims also a specific or implied dedication by J. A. Crow of the property in question as a part of Ocalla Street.

Neither side pled title by limitation.

A short recital of antecedent events is deemed appropriate. On September 17, 1957 the City Council passed a resolution declaring the necessity of acquiring the land in question in order to extend Ocalla Street. The resolution found that "the owners or parties claiming an interest in the said property" were J. A. Crow and wife, Mary J. Crow. An offer of $1,262.-50 was made to them for the purchase of the property. Crow and wife refused the offer.

On or about November 6, 1957 the City instituted condemnation proceedings, commissioners were appointed, and a hearing set. However the hearing was postponed and has never been held. The condemnation proceedings are still pending.

Meantime the City concluded that J. A. Crow and wife, Mary J. Crow, did not own the property. Soon thereafter the City obtained the quitclaim deed to the land from the A. E. Diceman Estate, entered upon the property, tore down fences, and began its street improvement operations. The strip of land in controversy became part of a concrete paved street with curbs and gutters.

On February 27, 1958 appellees filed this suit. In an amended petition they prayed for title and possession of the property, for a permanent injunction to restrain the City from interfering with their possession, and for $100 damages for destruction of trees and fences by the City. After a trial without a jury, the court on May 9, 1958 entered a judgment granting all the relief prayed for by appellees.

Appellant City relies mainly on the testimony of C. W. Watts, a surveyor of thirty years experience, and at the time of the trial Senior Engineer in the Survey Division of the City's Public Works Department. Watts did not personally survey the land, but depended on field notes prepared by other City employees under his supervision. He testified that the deed descrip-

tion was ambiguous because it contained a number of erroneous calls for courses and distances; but that relying on courses and distances where possible, and established points and corners where possible, he found that the strip of land in dispute was not included in the deed of April 17, 1945 from Diceman to Crow.

Appellees rely mainly on the testimony of O. R. McElya, an engineer and surveyor of many years experience, who has lived in the community for a long time and has a personal knowledge of the various tracts of land in the neighborhood. He surveyed the property acquired by Crow from Diceman by deed dated April 17, 1945. McElya testified that the description contained in the deed of April 17, 1945 was ambiguous in that several of the calls for course and direction were obviously wrong. He further testified that in such case a surveyor should be guided by objects found on the ground which might furnish the key to the grantor's intention. In this instance he relied on the fence lines, as he knew they had existed for many years. Using these fence lines together with the calls set out in the deed description, he found that the land in dispute lay within the original tract conveyed by Diceman to Crow by deed dated April 17, 1945.

■ In its first point on appeal the City asserts that the judgment in favor of appellees for title and possession is contrary to the uncontradicted evidence. In support of this point the City relies on the legal principle that where there is a conflict between a call for course and distance and a call to an established corner, line, point, or natural object, the latter call will prevail. See Willis, et ux. v. Dean, 149 Tex. 377, 233 S.W.2d 564; Dow v. American Liberty Oil Co., Tex.Civ.App., 83 S.W.2d 401; Kirby Lumber Co. v. Gibbs Bros. & Co., Tex.Com.App., 14 S.W.2d 1013. Based on that principle the City says that the uncontradicted testimony shows that the parcel of land in controversy does not lie within the tract deeded April 17, 1945 by Diceman to Crow. Therefore, says the City, we should reverse the judgment of the trial court and render judgment for the City.

We do not disagree with the legal principle upon which appellant relies, but in our opinion that principle is not applicable here. It is certainly true that several of the calls for courses and distances contained in the deed description are plainly wrong. But the record evidence before us does not establish the corners and lines named in the deed with such certainty as to enable us to render judgment for the City.

To illustrate what we mean we quote from the second and fourth calls in the deed: (2) "Thence in a Northeasterly direction 464 feet more or less to a point for corner said point being the most Southerly corner of a tract of land conveyed to C. S. Manning by A. E. Diceman and wife dated August 20th, 1946 * * *" (4) "Thence in a Northeasterly direction, paralled with the second call herein a distance of 160 feet more or less to a point in the S.W. line of Ocala Street;"

It is agreed by both surveyors that the call for 464 feet in a northeasterly direction is wrong, for it would end about 70 feet over into the Manning tract. But what of the point named: the most southerly corner of the Manning tract? Is it definitely established by uncontradicted evidence contrary to the court's judgment? The answer is no.

Here are excerpts from the testimony of McElya:

"Q. All right, now, the next call says * * * said point being the most southerly corner of a tract of land, conveyed to C. S. Manning by A. E. Diceman and wife by deed dated August 20, 1936 * * * Did you find that point? * * * A. It wasn't on the ground. * * *

"Q. As a surveyor shouldn't you have found that point? A. Well, you would if it is there, but if it is not there you can't find it. * * *

"Q. All right, now, Mr. McElya, why could you not find that point on the ground, the southerly corner of this Manning tract? A. Because it is not there, other than where a fence is.

"Q. Did you take the Manning tract and actually plat it in to see where it would be? A. No, sir.

"Q. Then you didn't attempt to find that actual corner, did you? A. No, I was surveying the property that Mr. Crow had a deed to; I wasn't surveying Manning's property.

"Q. But you didn't attempt to find the point that was called for in the Crow deed, did you? A. No, because there is no point out there as a point, as far as the point is concerned."

As to the fourth call and the "point in the S. W. Line of Ocala Street;" we quote from the testimony of Watts, the City's surveyor:

"Q. But you and yours went to the calls—to the called for points in the deed, is that correct? A. Yes, sir, as near as we could find them. * * *

"Q. You, as best you can, have tied all of these points in as called for in that deed. A. As near as we possibly can, yes, sir. * * *

"Q. Again, the deed calls for 160 feet, didn't it? A. More or less.

"Q. I understand it says more or less, but your more or less comes into quite a number of footage. All right, now, the way Mr. McElya had it figured, it comes to exactly 160 feet, is that right, sir? A. That's right, but it doesn't come—

"Q. Well, I am just asking you— A. It doesn't come to Ocalla.

"Q. Well, there was no Ocalla there at that time; there was no Ocalla Street there, was there? A. That's right.

"Q. There was no point to find the southeast side of Ocalla Street there, was there? A. No point defined there (indicating).

"Q. Well, there was no street there? A. Not at that point."

In our opinion the judgment awarding title and possession to appellees based on the deed of April 17, 1945 is not contrary to the uncontradicted evidence before the court with respect to established points and lines. So we cannot sustain appellees' first point in full. But we are of the opinion that the evidence is insufficient to support an award of title and possession to appellees based on said deed. To that extent appellant's first point is sustained.

In its second point on appeal the City contends that the court erred in refusing to award to the City fee simple title to the property in question. To support this contention appellant City relies on the quitclaim deed from Bernard Whitten, Administrator of the Estate of A. E. Diceman, deceased. The quitclaim deed conveyed title to the disputed property to the City only in the event the disputed property had not already been conveyed by Diceman to Crow by the deed of April 17, 1945. Thus we must come back to the construction of that deed, and the question whether it conveyed the disputed property to Crow. As we have already stated, the evidence in the record is not sufficient to determine that question. Appellant's second point is overruled.

In its third point appellant claims that the acts and representations of appellee J. A. Crow amounted to a dedication of the property in dispute for public use, which dedication was irrevocable and allowed the opening of the street for public purposes.

The position of the City is based on two plats filed for record by J. A. Crow. The first is a plat of an addition called Shamrock Shores No. Two, filed by Crow in January of 1942. This tract of land is south of the tract acquired by Crow from Diceman on April 17, 1945. At the time he filed

this plat in 1942 Crow did not own or claim to own the tract of land which he later acquired on April 17, 1945 by deed from Diceman, consequently he did not own or claim to own the land now in dispute. But in this 1942 plat Crow shows not only Shamrock Shores No. Two, which he owned but also some of the nearby tracts which he did not own. And the plat shows Ocalla Street by straight, solid lines as extending through to Garland Road, including the strip 50′ by 101′ now in dispute, which strip was then owned by someone other than Crow.

The second is a plat of Shamrock Shores No. Two, Subdivision Block "A", filed by Crow in January 1946. This plat was filed soon after Crow had acquired the tract by deed dated April 17, 1945, which he claims included the strip 50′ by 101′ now in dispute. This second plat also shows Ocalla Street, but the street lines of the strip in dispute are dotted lines, not solid lines. The tract has been subdivided and Crow has since sold lots shown on the plat by lot and block numbers.

The City concedes that Crow was not bound by the first plat at the time he filed it insofar as the plat shows Ocalla Street in solid lines including the strip in question, because at the time he filed the plat in 1942 it is undisputed that he did not own the land in question. But it says that he is bound by the second plat showing Ocalla Street, for by the time he filed the second plat in 1946, he claims he had acquired the disputed strip in his deed from Diceman dated April 17, 1945. In support of its view of the law of after acquired title appellant cites O'Fiel v. Janes, Tex.Civ.App., 269 S. W. 1074; City of Corsicana v. Anderson, 33 Tex.Civ.App. 596, 78 S.W. 261; City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924; Oswald v. Grenet, 22 Tex. 94; and City of Napa v. Howland, 87 Cal. 84, 25 P. 247.

■ It is our opinion that the evidence is not sufficient to invoke the rule on which appellant relies. In order to constitute a dedication there must be a clear and unequivocal intention to dedicate. City of Dallas v. Leake, Tex.Civ.App., 300 S.W.2d 135; City of Brownsville v. West, Tex.Civ. App., 149 S.W.2d 1034; 26 C.J.S. Dedication § 11, p. 415. In the instant case as we have already pointed out, the second plat filed by Crow shows the part of Ocalla Street now in dispute only by dotted lines. While such a plat might be accepted as some evidence of an intention to dedicate, other circumstances might be accepted as evidence that the plan by which the tract was to be subdivided had not yet been definitely determined. The fact that streets are shown on a plat by dotted lines is evidence that the intention to dedicate is only prospective, and that the streets actually have not yet been laid out. Galveston, H. & S. A. R. Co. v. City of Eagle Pass, Tex. Com.App., 260 S.W. 841. We therefore cannot accept Crow's second plat as conclusive evidence of his intention to dedicate the strip here involved. Appellant's third point is overruled.

■ Appellant's fourth point is that since the facts definitely show that public improvements had been completed prior to the granting of the injunction, the court erred in restraining the City of Dallas by a permanent injunction from interfering with and depriving appellees of the use, benefit and enjoyment of the property in controversy.

It is undisputed that after obtaining a quitclaim deed to the property from the Diceman Estate, the City moved onto the land, cleared away trees and fences, and constructed a paved street with curbs and gutters. The City was in possession at the time suit was filed and the improvements had been completed. Appellees had not sought a temporary injunction prior to the completion of the improvements. It is of course undisputed as a matter of law that the City may exercise the right of eminent domain, and could have taken possession of the land by condemnation, even if appellees' prior title be recognized.

Under such circumstances appellees were not entitled to the permanent injunction restraining the City from interfering with their possession of the property. If the entry of the City on the land was unlawful and in violation of appellees' right of title or possession, appellees may of course sue for damages. But under the undisputed facts now before us, appellees are relegated to a suit for damages as their only relief. City of Dallas v. Megginson, Tex. Civ.App., 222 S.W.2d 349; City of Jasper v. Brown, Tex.Civ.App., 39 S.W.2d 112; Kamper v. City of Chicago, 7 Cir., 215 F. 706; McCullough v. City of Denver, C.C., 39 F. 307; Hillside Water Co. v. City of Los Angeles, 10 Cal.2d 677, 76 P.2d 681. We sustain appellant's fourth point.

The judgment of the trial court is reversed and the cause is remanded for another trial.

### On Motion for Rehearing

Appellant and appellees have both filed motions for rehearing. Appellant contends that we should have reversed the trial court's judgment and rendered judgment in favor of the City. Appellees, J. A. Crow and wife Mary Crow, contend that we should have affirmed the trial court's judgment in their favor.

Appellant insists that appellees are estopped to deny a prior dedication by them of the property in dispute for street purposes.

In its answer appellant City pled as follows: "Plaintiff J. A. Crow dedicated said land to public use as a part of Ocalla Street by filing and causing to be recorded a plat of Shamrock Shores No. 2, an Addition to the City of Dallas, Texas, dated January 19, 1942, and recorded in Volume 7, page 365 of the Plat Records of Dallas County, Texas, * * * and subsequent to the recording of said plat, did convey or cause to be conveyed the lots in said Addition by referring to said plat. * * * Plaintiff, J. A. Crow did further ratify and confirm said dedication by filing and recording the plat

of Shamrock Shores No. 2, Subdivision of Block A, Dallas, Texas, dated February 23, 1946, and recorded in Volume 9, page 187 of the Plat Records of Dallas County, Texas, * * * and did, subsequent to the recording of the same, convey or cause to be conveyed the lots as shown in said subdivision, referring to said Plat; that each of said Plats dedicated the streets and alleys as shown thereon, which action on the part of the Plaintiff, J. A. Crow, amounted to an irrevocable dedication of that portion of Ocalla Street now claimed by Plaintiffs, to the public use to be used as a street and for street purposes. * * * That the acceptance by the deed * * * and the filing and recording of the plats * * * and the sale of the subdivided lots in connection therewith, amounted to a dedication of that portion of Ocalla Street in which the Plaintiffs or their successors in title had any interest, and the Plaintiffs are estopped to deny the effect of the same."

The record evidence establishes without dispute that on January 19, 1942 appellee J. A. Crow filed a plat of Shamrock Shores No. 2, a tract of land recently acquired by him. The plat shows the addition to have been subdivided into numbered lots. At the time of filing this plat Crow did not own the land now in dispute, but it was, or had been part of an adjacent tract of land. However Crow's plat of Shamrock Shores No. 2 showed part of surrounding tracts of land not owned by Crow. The land in dispute was shown in the plat, and it is shown as part of Ocalla Street, which was drawn on the plat in unbroken lines extending on through without a break to Garland Road. The evidence is uncontradicted that Crow sold lots out of Shamrock Shores No. 2, to various purchasers by reference to this plat.

It is also undisputed that Crow later acquired the adjacent tract of land by deed from A. E. Diceman, which tract he claims includes the land in dispute. On February 23, 1946 Crow filed for record a plat subdividing this tract into numbered lots, this new addition being designated as Shamrock

Shores No. 2, Subdivision of Block A. On this plat the disputed property is again shown as part of Ocalla Street, which is again drawn on the plat as extending through to Garland Road. However one of the lines of the street across the land in dispute is drawn in a dotted line. It is uncontradicted that Crow also sold lots in Shamrock Shores No. 2, Subdivision of Block A by reference to this plat.

To summarize: it is shown by the undisputed evidence that appellee Crow filed two plats both of which show the land in dispute as part of Ocalla Street; the first plat having been filed when he did not claim to own the land in dispute, the second plat having been filed after he claims to have acquired title to said land. In the second plat one line of Ocalla Street across the land in dispute is drawn in a dotted line. Appellee sold lots to various purchasers by reference to these two plats. Copies of these two plats are reproduced herewith.

The upper plat was filed by Crow in 1942 before he acquired title to an adjacent tract of land which he claims includes the property in dispute. The lower plat was filed by Crow in 1946 after he acquired the tract of land which he claims includes the property in dispute. It will be noted that Ocalla Street is shown extended across the disputed land in both plats.

On reconsideration we have concluded that as a matter of law appellees are estopped under the undisputed facts to deny that the land in controversy had been dedicated as a public street. It is true that Crow did not own the land in controversy when he filed his first plat showing it to be a part of Ocalla Street. But he claims that he later acquired title to it through his

deed from Diceman. Meantime he had sold lots to various purchasers by reference to the plat. In our opinion it is doubtful that he afterwards acquired title to the disputed property through the Diceman deed, but if we concede that he did, he is estopped as the holder of an after acquired title to deny the prior street dedication. O'Fiel v. Janes, Tex.Civ.App., 269 S.W. 1074 (Aff. Com.App., 280 S.W. 163); City of Corsicana v. Anderson, 33 Tex.Civ.App. 596, 78 S.W. 261; Oswald v. Grenet, 22 Tex. 94; City of Napa v. Howland, 87 Cal. 84, 25 P. 247.

■ Furthermore we have concluded that appellees are bound by the second plat filed by Crow, though one of the street lines is shown by a dotted line instead of an unbroken line. Even if we say that the dotted line is evidence of a prospective dedication, as we did say in our original opinion, appellees, having sold lots by reference to the plat, cannot later repudiate their intention to dedicate. We quote from Oswald v. Grenet, 22 Tex. 94, an early case, wherein our Supreme Court said: "A dedication has been defined to be the act of devoting or giving property, for some proper object, and in such manner as to conclude the owner. Hunter v. Trustees, etc., 6 Hill [N.Y.] 407, 411. Thus if one owning land, exhibit a map of it, on which a street is defined, though not as yet opened, and building lots be sold by him, with reference to a front or rear on that street, this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever. Wyman v. Mayor, etc., 11 Wend. [N.Y.], 486; Livingston v. Mayor, etc., 8 [Wend. (N.Y.)] 85; [Matter of Twenty-Ninth Street in City of New York], 1 Hill, N.Y., 189, 192. And this principle is not limited in its application to the single street, on which the lots of the purchasers are situated. * * * assuming that this space was to be given to the public for a well, upon the condition that the inhabitants would dig the well, it cannot be supposed that it was contemplated, that this would be done immediately, or until the wants or convenience of the inhabitants required it. This part of the city must first be peopled, before there would be inhabitants to dig, or have occasion for a well. It might be many years before this part of the city would become sufficiently populous, to require the convenience of a public well. It is not pretended, that there was any time limited within which it must be made. *Those who purchased in view of the proffer of this use, had the right to suppose that it would not be withdrawn, nor could it be, to their detriment. Their purchase, in view of this proposed use, made it a dedication of property for that use, which could not be resumed.*" (emphasis ours). See also City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924.

■ Appellees point out that they paid taxes to the City of Dallas on the land in question. This fact, under the circumstances present in this case, must be considered immaterial so far as appellees' claim of title is concerned. Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74.

Appellees did not plead title by limitation, but if they had it would have availed them nothing. We have held that the land had been dedicated as a public street. Streets are not subject to claims of title by limitation. Art. 5517, Vernon's Ann.Civ.St.

Appellees' motion for rehearing is overruled.

Appellant's motion for rehearing is sustained, our previous judgment reversing the trial court's judgment and remanding the cause for another trial is set aside, and on rehearing the judgment of the trial court is reversed and judgment is here rendered for appellant City of Dallas, that appellees J. A. Crow and wife Mary Crow take nothing by their suit.