John W. BASKIN, Jr., Individually and d/b/a Baskin Construction Company, Appellant,

v.

Dee JEFFERS, et al., Appellees.

No. 09 81 054 CV.

Court of Appeals of Texas, Beaumont.

Feb. 10, 1983.

Rehearing Denied March 17, 1983.

Bill R. Jones, Livingston, for appellant.

James W. Wright, Livingston, Eugene J. Pitman, Houston, for appellees.

## OPINION

CLAYTON, Justice.

This is an appeal from a summary judgment and a permanent injunction issued thereon. Appellees sought a permanent injunction against appellant, John W. Baskin, Jr., individually and d/b/a Baskin Construction Company, from violating the restrictive covenants of Lakeside Village Estates Subdivision and to prohibit appellant from constructing townhouses upon a tract of land in the subdivision in violation of the restrictive covenant limiting construction in the subdivision to single family residences. Each party filed motions for summary judgment. The trial court granted appellees' motion and denied the motion filed by appellant.

Lakeside Village Estates Subdivision is a residential subdivision in Polk County, Texas, consisting of 124.49 acres of land, as created and dedicated by a plat recorded in the Polk County Plat Records. The subdivision was restricted by the execution and recording of amended restrictions duly recorded in the Polk County Deed Records.

It is undisputed that each appellee is a property owner and resident of the subdivision; the property made the basis of this suit is included within the boundaries of the 124.49-acre tract; appellant is the present owner of said 124.49-acre tract (excepting therefrom all property which had been sold prior to appellant's acquisition); appellant has taken action and intends to construct townhouses on the small tract made the basis of this suit; the townhouses would consist of a structure to be divided into seven (7) "portions" which would be a common building with no gaps between the units, sharing common walls and adjoining slabs; appellant purchased from the original developer and knew of the restrictive covenants.

Appellees contend that appellant, in constructing the townhouses, will be in violation of the "Residential Area Covenants" which provide, inter alia: "No lots shall be used except for single family residential purposes."

Appellees argue that the tract upon which the townhouses are to be constructed is a "lot" as is designated and appears upon the recorded plat of the subdivision. Appellant contends that the tract is not such a "lot". These contentions present the primary question before this court.

The original developers of the subdivision owned a 300.735-acre tract of land out of which was set aside this certain 124.49-acre tract for a private residential subdivision, and in conjunction therewith established certain covenants, warranties and restrictions.

The 124.49-acre tract, containing the subdivision involved herein, was divided into seventeen (17) blocks, each of which contains one or more lots. The subdivision contains a total of one hundred and six (106) lots which are identified by solid boundary lines and a unique lot and block numbering system. The plat shows that

portions of the 124.49-acre tract are designated as streets, parks, a lake, a dam, spillways, boat ramp, a bridge, and utility easements. In addition to these designated areas, the plat contains several parcels of raw acreage which are not designated as lots or for any other particular use. Such undesignated parcels of land are of irregular shapes and sizes and generally encircle the lots, parks, roads, lake and other designated areas. These raw acreage tracts are not numbered and have boundary lines which are, with the exception of the common boundaries with the numbered lots, shown upon the plat by broken lines. Although metes and bounds of the designated tracts are set out on the plat, no such information is given for the undesignated raw acreage.

The plat of the subdivision shows that Block No. 17 lies between the most western portion of the subdivision and a street designated as West Lake Drive. The western boundary line of the subdivision is the western boundary line of Block 17. The land situated west of such boundary line is raw acreage. Block No. 17 runs generally north and south. The most southern lot in such block is numbered "1" and the lots located north of such Lot No. 1 are numbered 2, 3, 4, 5, and 6. Immediately south of Lot No. 1 is the area upon which appellant intends to build the townhouses. This area adjoins Lot No. 1 and runs south immediately west of West Lake Drive. This area is shown upon the plat by broken lines, is not numbered, and does not show any markings or designation of any kind. All other lots in the subdivision are shown by clear and solid boundary lines and bear the number of the lot.

The disputed area is shown by broken lines (on the plat) from the southern solid boundary line of Lot No. 1, such broken lines running south and southeast to the western boundary line of West Lake Drive. From that point, the broken lines continue southward to a point in the southern boundary line of the subdivision. The land situated between the southern end of West Lake Drive and the southern boundary line of the subdivision is raw acreage (with the exception of that which is designated as East Lake Drive and a spillway). Such raw acreage is not designated for any particular purpose.

It is clear that the broken lines running from the southwest corner of Lot No. 1 in Block 17 is nothing more than the projected boundary line of the raw acreage lying within the 124.49-acre tract out of which the Lakeside Village Estates Subdivision was platted, subdivided and dedicated.

■ The term "lot" can have different connotations, depending upon all facts and circumstances attending its use. Where it is used, as in this case, in connection with a platting of a tract of land into a residential subdivision, we think it can have but one meaning and that is it is a fractional part of a block limited by fixed boundaries on an approved recorded plat. *Wall v. Ayrshire Corporation,* 352 S.W.2d 496 (Tex.Civ.App. —Houston 1961, no writ). The broken lines, insofar as they are sought to prove the boundary lines of the disputed area, are not sufficient to constitute a clear, definite, and fixed boundary line. See *Ives v. Karnes,* 452 S.W.2d 737 (Tex.Civ.App.—Corpus Christi 1970, no writ); *City of Dallas v. Crow,* 326 S.W.2d 192 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.).

■ All the lots within this subdivision are laid out by clear solid boundary lines and are numbered, and the entire tract contains raw acreage which is not within the clear solid boundary lines of the platted residential area, and the disputed area has as its purported boundary line nothing more than broken lines which clearly appear to be a projected boundary line of the raw acreage lying within the 124.49-acre tract out of which the subdivision was platted, subdivided, and dedicated. Under these facts and circumstances, we hold the disputed area is not a "lot" lying within the boundary lines of the Lakeside Village Estates Subdivision and is not subject to the restrictive covenants applicable to the lots within the subdivision.

■ Appellees further contend that even though the disputed area may not be a lot within the subdivision, it is subject to the restrictions because all the land lying within the area of the 124.49-acre tract is bur-

dened with such restrictions. We do not agree.

The "Residential Area Covenants" contain fourteen specific restrictions as to the use, type and size of buildings, lot lines, construction plans and specifications, references to central water system, activities, etc. Each restriction specifically refers to each "lot" within the subdivision. Not one single restriction is referred to as being applicable to any land not within the boundaries of the subdivision or any land other than a "lot". All of the restrictions clearly are inappropriate and could not be applied with any reasonable use of such raw acreage. The restrictions can only be considered as consistent with any reasonable use of the individual lots as shown on the plat of the subdivision. It is clear that the raw acreage is not burdened with such restrictions.

There are no disputed facts in this case. All parties filed motions for summary judgment. For the reasons hereinabove stated, the trial court erroneously granted appellees' motion for summary judgment and erroneously issued the injunction.

The judgment is reversed, and judgment is here rendered that the injunction is dissolved and judgment entered that appellees take nothing by their suit.